# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES and GERALDINE ZILINSKY, individually and on behalf of all others similarly situated,<br><br>        *Plaintiffs*,<br><br>vs.<br><br>LEAFFILTER NORTH, LLC,<br><br>        *Defendant.* | CIVIL ACTION NO. 2:20-CV-6229-MHW-KAJ<br><br>JUDGE MICHAEL H. WATSON<br><br>**DEFENDANT LEAFFILTER NORTH, LLC'S MOTION TO DISMISS COUNT II OF PLAINTIFFS' COMPLAINT** |

Plaintiffs James and Geraldine Zilinsky assert a cause of action under Ohio law for "Breach of Implied Warranty in Tort" (Count II) against Defendant LeafFilter North, LLC related to a supposed "defective gutter protection system." (Complaint, Doc No. 1, ¶ 1). But, the Ohio Products Liability Act, Ohio Rev. Code, §2307.72, *et seq*., preempts this claim. *See McManus v. Smith & Nephew, Inc.*, 3:19-CV-066, 2020 WL 127702, at *3 (S.D. Ohio Jan. 10, 2020) ("Plaintiff's non-statutory claims of Negligence, Breach of Express Warranty, Breach of Implied Warranty, Fraudulent Misrepresentation, Fraudulent Concealment, Negligent Misrepresentation and Unjust Enrichment are all abrogated by the OPLA, and will be dismissed, with prejudice, for failure to state a claim for relief.")

The Court should dismiss Count II with prejudice because no set of facts or amendment would entitle Plaintiffs James and Geraldine Zilinsky to the relief they seek on behalf of

themselves or the proposed putative class. Therefore, pursuant to Fed. R. Civ. Proc. 12(b)(6), Defendant LeafFilter North, LLC respectfully requests that the Court grant its Motion to Dismiss for the reasons stated in its memorandum in support, which is attached and incorporated by reference.

Respectfully submitted,

 */s/ Gregory J. Phillips*
GREGORY J. PHILLIPS (0077601)
TREVOR COVEY (0085323)
MICHAEL MEYER (0087953)
**BENESCH, FRIEDLANDER, COPLAN &
 ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  gphillips@beneschlaw.com
            tcovey@beneschlaw.com
            mmeyer@beneschlaw.com

*Attorneys for Defendant LeafFilter North, LLC*

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES and GERALDINE ZILINSKY, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) CIVIL ACTION NO. 2:20-CV-6229-MHW-KAJ |
| *Plaintiffs*, | )<br>) |
| vs. | )<br>) |
| LEAFFILTER NORTH, LLC, | ) JUDGE MICHAEL H. WATSON<br>) |
| *Defendant.* | )<br>)<br>)<br>) **DEFENDANT LEAFFILTER NORTH,**<br>) **LLC'S MEMORANDUM IN SUPPORT**<br>) **OF ITS MOTION TO DISMISS COUNT**<br>) **II OF PLAINTIFFS' COMPLAINT**<br>) |

**I.      INTRODUCTION**

According to Plaintiffs James and Geraldine Zilinsky ("Plaintiffs"), Defendant LeafFilter North, LLC's ("LeafFilter") gutter protection systems supposedly possess a latent defect that caused damage to "Plaintiffs' and [proposed putative] class members' homes, foundations, landscaping, sidewalks, and fascia." (Complaint, Doc. No. 1, ¶¶ 1, 96-101). Plaintiffs allege that this purported defect renders the LeafFilter system unfit for its intended purpose. (*Id*. at ¶ 100). On behalf of themselves and a proposed "Ohio Law Subclass" consisting of all individuals who visited the LeafFilter website, Plaintiffs assert a cause of action for "Breach of Implied Warranty in Tort." (*Id*. at Count II). Plaintiffs allege that this defect "was the direct and proximate cause of economic damages to Plaintiffs and Ohio Law Subclass members, as well as physical property damage." (*Id*. at ¶¶ 101).

3

The Ohio Product Liability Act ("OPLA"), Ohio Rev. Code, §2307.72, *et seq*. preempts this common law claim making dismissal appropriate.[1] OPLA's relevant statutory language specifically abrogates all "common law product liability causes of action." *See* Ohio Rev. Code § 2307.72(B). The crux of Plaintiffs' lawsuit is product liability. Thus, the Court should dismiss Count II with prejudice.

## II. THE ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege that LeafFilter is the exclusive distributor of its proprietary LeafFilter system, a gutter system for residential and commercial buildings that permits rainwater but not leaves and other debris to flow through the LeafFilter, thereby preventing clogged gutters and resulting structural damage. (Compl., Doc. No. 1, ¶ 10). LeafFilter is "The Nation's Largest Gutter Protection Company" and "America's #1 Professionally Installed Gutter Guard." (*Id*. at ¶ 11). LeafFilter has served thousands of satisfied customers across the United States. (*Id*. at ¶ 22).

Plaintiffs detail that LeafFilter's system is a patented, three-piece system comprised of a Micromesh layer, a uPVC layer, and a structural hanger. (*Id*. at ¶ 23-26). The Micromesh layer made of surgical grade stainless steel that does not rust or corrode. (*Id*., ¶ 24). This mesh layer is 275 microns fine, preventing debris from entering the gutter system. (*Id*.). The uPVC component of the system is manufactured with a built-in pitch to shed debris, and forms the durable gutter body that will never warp or deteriorate. (*Id*. at ¶ 25). The structural hanger component of the system securely fastens the LeafFilter system to the customer's fascia board using internal hidden hangers. (*Id*. at ¶ 26).

Despite LeafFilter's obvious success in the U.S. market, Plaintiffs contend that the

---

[1] Plaintiffs allege that Count II is "based on Ohio law." (Compl., Doc. No. 1, at page 28). Accordingly, LeafFilter's arguments in this motion to dismiss are also based on Ohio law. LeafFilter reserves all of its rights as to the correct choice of law analysis in this case, including whether Ohio law applies to any of the claims of non-Ohio residents such as Plaintiffs.

4

LeafFilter system must suffer a latent defect. Plaintiffs allege that while LeafFilter represents that the system handles heavy rainwater (see *id*. at ¶¶ 28-38), the system did not meet their expectations. That is, after a moderate to heavy rain, their mulch landscaping around their house appeared to be washed up, and water had allegedly overflowed over the gutters and saturated Plaintiffs' home foundation, patio, pergola wooded roof, cement walkway, and porch foundation. (*Id*. at ¶¶ 49-50).

Plaintiffs allege that "[h]ad Defendant disclosed that the LeafFilter system was defective and caused rainwater to overflow the during moderate to heavy rains, Plaintiffs would not have purchased the LeafFilter, or would have paid substantially less for the product." (*Id*. at ¶ 60). Plaintiffs further allege that "[t]he LeafFilter defect, as well as Defendant's failure to disclose the defect to consumers, has caused Plaintiffs and class members to suffer ascertainable harm in the amount of the actual cost of the LeafFilter system, out of pocket costs for removal, and/or damage to their home, foundation, and landscaping." (*Id*. at ¶ 59).

Plaintiffs styled Count II of the Complaint as "Breach of Implied Warranty in Tort." (*Id*. at Count II). The crux of this Count is the alleged latent defect in the gutter system where "water routinely runs over the top of the LeafFilter system and outside of the gutter altogether, and debris accumulates on top of the LeafFilter system, which results in loss of its intended and marketed purpose for the LeafFilter product, as detailed herein." (*Id*. at ¶ 98). Plaintiffs allege that the defect existed at the time the gutter system left LeafFilter's control. (*Id*. at ¶ 99). Plaintiffs then surmise that the LeafFilter system "failed to meet the expectations of a reasonable consumer" because the "LeafFilter product does not function as a reasonable consumer would expect because rainwater does not run through it, and instead runs over the top of the LeafFilter system and outside the gutter altogether, and the supposedly maintenance free LeafFilter system

5

allows debris to accumulate." (*Id*. at ¶ 100). Plaintiffs claim that this defect is "dangerous" and that such danger " cannot be eliminated without paying, at significant cost, to have the defective product removed." (*Id.*). Plaintiffs conclude that this defect is "the direct and proximate cause of economic damages to Plaintiffs and Ohio Law Subclass members, as well as physical property damage." (*Id*. at ¶ 101).

### III. COUNT II OF PLAINTIFFS' COMPLAINT CANNOT SURVIVE LEAFFILTER'S MOTION TO DISMISS

To withstand a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (rejecting "conclusory allegations in the complaint that the defendant violated the law," as "the sufficiency of a complaint turns on its 'factual content'") (quoting *Iqbal*, 556 U.S. at 683).

In assessing a complaint, the Court at this stage "accepts as true all factual allegations, but … does not apply this presumption of truth to conclusory or legal assertions." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016). To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. at 678 (*citing Twombly*, 550 U.S. at 555).

Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, "[t]o survive a motion to dismiss, a complaint must

6

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 570). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and dismissal is warranted. *Iqbal*, 556 U.S. at 679 (*citing* Fed. R. Civ. P. 8(a)(2)).

### IV. OPLA PREEMPTS PLAINTIFFS' BREACH OF IMPLIED WARRANTY IN TORT CLAIM

Plaintiffs' Count II for Breach of Implied Warranty in Tort on behalf of the proposed Ohio Law Subclass is a product liability claim. The current version of OPLA, enacted on April 7, 2005, makes clear its intent: "to abrogate all common law product liability claims or causes of action." R.C. § 2307.71(B).

As defined within OPLA:

> "Product liability claim" means a claim that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, ***or physical damage to property other than the product in question***, that allegedly arose from any of the following: (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) Any warning or instruction, or lack of warning or instruction, associated with that product; (c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(A)(13) (emphasis added). Count II falls squarely within this definition.

7

In broadly defining "product liability claim" in this Section, the Ohio General Assembly evinced a clear mandate to treat all claims arising from the design, manufacturing, marketing, warning, warranty or representation of a product as "product liability claims" exclusively defined, remedied, and governed by OPLA. *See Beckemeyer v. Gelco Corp.*, No. 1:17CV695, 2019 WL 952733, at *2 (S.D. Ohio Feb. 27, 2019) *citing Krumpelbeck v. Breg, Inc.*, 491 Fed.Appx. 713, 715 (6th Cir. 2012) ("The OPLA expressly abolished all common law product liability claims."). Consequently, the essential nature of the substantive allegations of a claim should guide courts, not the artificial label that a plaintiff attaches to that claim. *See Lawyer's Cooperative v. Muething*, 65 Ohio St.3d 273, 277-78 (1992).

"Considering this statutory language, courts have routinely dismissed non-statutory product–liability claims brought under Ohio law," including breach of implied warranty claims asserted under the Ohio common law. *McKinney v. Microsoft Corp.*, No. 1:10-CV354, 2011 WL 13228141, at *7 (S.D. Ohio May 12, 2011) (dismissing non-statutory product liability claims for fraudulent misrepresentation, fraudulent concealment, negligence, and breach of implied warranty in connection with a video game system defect which allegedly caused the product to fail); *see also Miller v. ALZA Corp.*, 759 F.Supp.2d 929, 943-44 (S.D. Ohio 2010) (the OPLA abrogated common law claims of negligence, breach of express warranty and breach of implied warranty claims); *Miles v. Raymond Corp.*, 612 F.Supp.2d 913, 923 (N.D. Ohio 2009) (dismissing common law negligence and breach of implied warranty claims); *Tompkin v. Am. Brands*, 219 F.3d 566, 575 (6th Cir. 2000) (holding that "common law negligence claims have been preempted by OPLA" in action brought against cigarette manufacturers); *Duffey v. Rust-Oleum Corp.,* No. 2:19-CV-775, WL 4933894, at *2 (S.D.Ohio, Aug. 24, 2020) ("[Plaintiff's claims] are all subsumed under the Ohio Product Liability Act ("OPLA"), which preempts

Plaintiff's common law product liability claims and negligence claims."); *Hempy v. Breg, Inc.*, No. 2:11-CV-900, 2012 WL 380119, at *3 (S.D. Ohio Feb. 6, 2012) (where the court held that the OPLA preempts Plaintiff's claims for negligence, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose in connection with an allegedly defective knee pain pump); *Krumpelbeck v. Breg, Inc.*, 491 Fed.Appx. 713, 721 (6th Cir. Aug. 10, 2012) ("Because they were abrogated by the 2005 amendment to the OPLA . . . the district court properly granted summary judgment on [Plaintiff's] common law claims of breach of express warranty, breach of implied warranty, and negligent misrepresentation and fraud."); *Volovetz v. Tremco Barrier Sols., Inc.*, 2016-Ohio-7707, ¶ 34, 74 N.E.3d 743, 753 (affirming dismissal of product liability claims for negligent installation of basement waterproofing system as preempted by the OPLA).

Here, Plaintiffs' Breach of Implied Warranty in Tort claim "seek[s] to recover compensatory damages from a manufacturer or supplier for ... physical damage to property other than the product in question ... that allegedly arose from ... the design ... production, ... or any failure of that product to conform to any relevant representation or warranty" as OPLA provides. *See* Ohio Rev. Code § 2307.71(A)(13); (*see also* Compl. Doc. No. 1, ¶¶ 96-101). Plaintiffs alleges that "[t]he defect in the LeafFilter system was the direct and proximate cause of economic damages to Plaintiffs and Ohio Law Subclass members, as well as physical property damage." (*Id*. at ¶ 101). Plaintiffs further allege that the physical property damage in question is not damage to the LeafFilter system itself, but to alleged "damage to their home, foundation, and landscaping." (*Id*. at ¶ 59; *see also id* at ¶ 58 ("The LeafFilter system was not damaged during the removal process and is currently being stored in Plaintiffs' garage.")). Because Plaintiffs seek to recover damages to their home and surrounding property, OPLA preempts Count II. *See,*

9

*e.g., Hoffer v. Cooper Wiring Devices, Inc.*, 106CV763, 2007 WL 1725317, at *2 (N.D. Ohio June 13, 2007) (recognizing that plaintiffs could not state breach of implied warranty in tort claim against manufacturer of wiring receptacle to the extent the damage caused by the allegedly defective receptacle was to the wiring around the receptacles rather than the receptacle itself pursuant to the OPLA).

Because Count II is a product liability claim, OPLA provides for Plaintiffs' exclusive remedy. R.C. § 2307.71(B) states: "Sections 2307.71 to 2307.80 of the Revised Code ***are intended to abrogate all common law product liability causes of action***." (emphasis added). Thus, the Court should dismiss Plaintiffs' Breach of Implied Warranty in Tort claim, with prejudice, for failure to state a claim for relief.

**V.     CONCLUSION**

For the reasons articulated above, LeafFilter respectfully requests that the Court dismiss Count II of Plaintiffs' Complaint with prejudice.

        Respectfully submitted,

*/s/ Gregory J. Phillips*
GREGORY J. PHILLIPS (0077601)
TREVOR COVEY (0085323)
MICHAEL MEYER (0087953)
**BENESCH, FRIEDLANDER, COPLAN &
  ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  gphillips@beneschlaw.com
       tcovey@beneschlaw.com
       mmeyer@beneschlaw.com

*Attorneys for Defendant LeafFilter North, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2021, a copy of the foregoing Defendant LeafFilter North, LLC's Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

      /s/ Gregory J. Phillips
*One of the Attorneys for Defendant*
*LeafFilter North, LLC*