## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JAMES ZILINSKY, GERALDINE ZILINSKY, CORY SIMPSON, MEGAN McGINLEY, SANDRA GARRETT DORSEY, BRIAN DERING, THERESA DERING, ALAN ARMSTRONG AND SANDY ARMSTRONG individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> vs. <br><br> LEAFFILTER NORTH, LLC, <br><br> *Defendant*. | CASE NO. 2:20-CV-6229-MHW-KAJ <br><br> JUDGE MICHAEL H. WATSON <br><br> **DEFENDANT LEAFFILTER NORTH, LLC'S MOTION FOR PARTIAL DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MOTION TO STRIKE THE NATIONWIDE AND OHIO SUBCLASS CLAIMS PURSUANT TO FED. R. CIV. P. 23(c)(1)(A)** |

Plaintiffs assert nine separate counts against Defendant LeafFilter North, LLC ("Defendant") over an alleged "defective gutter protection system." (*See* Amended Complaint ["Am. Compl."], Doc No. 19, ¶¶ 1 & 134-243). There are myriad and substantial defects with several of Plaintiffs' causes of action that render them unsuitable for classwide treatment. Consequently, pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves for an order to dismiss Counts I and II of Plaintiffs' Amended Complaint with prejudice for failure to state a claim. Similarly, pursuant to Fed. R. Civ. P. 23(c)(1)(A), Defendant seeks an order striking the class allegations asserted on behalf of the Nationwide Class and Ohio Subclass in Counts I-II and VIII-IX of the Amended Complaint, respectively, to prevent wasteful class discovery and class-certification proceedings.

Plaintiffs' claim pursuant to the Ohio Consumer Sales Protection Act ("OCSPA"), O.R.C. § 1345.01, *et seq.* (Count I) is doomed because none of the named Plaintiffs are Ohio

residents. (Am. Compl. ¶¶ 4-12). They do not claim to have purchased a LeafFilter product in Ohio or viewed any allegedly deceptive advertising in Ohio. Consequently, they cannot state a claim due to the jurisdictional limitations of the OCSPA. *See* O.R.C. § 1345.04 (courts have jurisdiction over OCSPA claims "with respect to any act or practice *in this state*") (emphasis added); *Loreto v. Proctor & Gamble Co.*, 737 F.Supp.2d 909, 917 (S.D.Ohio 2010), *aff'd in relevant part* 515 Fed. Appx. 576, 578 (6th Cir. 2013) (dismissing OCSPA claims brought by non-Ohio residents due to lack of standing).

By the same logic, Plaintiffs cannot represent a nationwide class of absent purchasers—misleadingly referred to as an "Ohio Subclass"—in connection with Plaintiffs' OCSPA claim. *See Pilgrim v. Universal Health Card, LLC*, 5:09CV879, 2010 WL 1254849, at *3 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (striking nationwide class allegations under the OCSPA based on website advertisements emanating from Ohio, on the basis that "Ohio courts have found that the OCSPA cannot apply to consumers outside the state of Ohio"). This proposed subclass consists of consumers across the nation who visited Defendant's website to obtain a product estimate or register a product warranty. (Am. Compl. ¶ 136). But the Ohio Subclass consists primarily of non-Ohio residents who did not purchase a LeafFilter product in Ohio and that never viewed the purported false advertising in Ohio. This subclass claim should be stricken for the same reason that the individual Plaintiffs cannot state a claim.

The Ohio Products Liability Act, Ohio Rev. Code ("OPLA"), §2307.72, *et seq.*, preempts Plaintiffs' claim for breach of implied warranty in tort. *See McManus v. Smith & Nephew, Inc.*, 3:19-CV-066, 2020 WL 127702, at *3 (S.D. Ohio Jan. 10, 2020) ("Plaintiff's non-statutory claims of Negligence, Breach of Express Warranty, Breach of Implied Warranty, Fraudulent Misrepresentation, Fraudulent Concealment, Negligent Misrepresentation and Unjust

Enrichment are all abrogated by the OPLA, and will be dismissed, with prejudice, for failure to state a claim for relief."). Defendant previously moved to dismiss Plaintiffs' Count II on this very basis. (*See* Doc. No. 6). Attempting to circumvent the OPLA, Plaintiffs merely excluded any reference to property damage in the Amended Complaint. Now, without expressly disclaiming property damage as a remedy sought, Plaintiffs allege to have suffered economic harm by way of purchasing a defective gutter that does not work as advertised. But the crux of this claim is an allegedly defective gutter system. (*See* Am. Compl. ¶¶ 150-153). In any event, the OPLA plainly abrogates implied warranty in tort claims. Consequently, Plaintiffs' OCSPA claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Furthermore, the Ohio Subclass is hopelessly overbroad because it necessarily includes class members who have suffered no cognizable injury, and the economic loss doctrine further bars this claim to the extent Plaintiffs seek only pure economic losses.

Plaintiffs seek to represent a Nationwide Class of consumers under state common law fraud and unjust enrichment. (Am. Compl., ¶¶ 222-223 & 238). Plaintiffs admit that Defendant provides its products in 42 different states. (Am. Compl., ¶ 19). Plaintiffs' proposed Nationwide Class consequently fails the commonality and predominance requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

The grounds for this motion are more fully set forth in the attached memorandum in support.

Respectfully submitted,

_/s/ Gregory J. Phillips_
GREGORY J. PHILLIPS (0077601)
TREVOR COVEY (0085323)
MICHAEL MEYER (0087953)
SUZANNE M. ALTON DE ERASO (admitted
_pro hac vice_)
**BENESCH, FRIEDLANDER, COPLAN &
    ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  gphillips@beneschlaw.com
            tcovey@beneschlaw.com
            mmeyer@beneschlaw.com
            saltondeeraso@beneschlaw.com

_Attorneys for Defendant LeafFilter North, LLC_

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES ZILINSKY, GERALDINE ZILINSKY, CORY SIMPSON, MEGAN McGINLEY, SANDRA GARRETT DORSEY, BRIAN DERING, THERESA DERING, ALAN ARMSTRONG AND SANDY ARMSTRONG individually and on behalf of all others similarly situated, <br><br>*Plaintiffs*, <br><br> vs. <br><br> LEAFFILTER NORTH, LLC, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 2:20-CV-6229-MHW-KAJ <br><br> JUDGE MICHAEL H. WATSON <br><br> **DEFENDANT LEAFFILTER NORTH, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6) AND MOTION TO STRIKE THE NATIONWIDE AND OHIO SUBCLASS CLAIMS PURSUANT TO FED. R. CIV. P. 23(c)(1)(A)** |

## I.     INTRODUCTION

According to named Plaintiffs James and Geraldine Zilinsky, Cory Simpson, Megan McGinley, Sandra Garrett Dorsey, Brian and Theresa Dering, and Alan and Sandy Armstrong (collectively, "Plaintiffs" and individually, a "Plaintiff"), Defendant LeafFilter North LLC's ("Defendant") gutter protection systems allegedly possess a latent defect that caused "rainwater to flow over the top of the LeafFilter system and gutters" and "debris to accumulate on top of the LeafFilter system that must be cleaned off by the homeowner."  (Am. Compl.  ¶¶ 1).  On behalf of themselves and a Nationwide Class of consumers, plus numerous consumer subclasses, Plaintiffs assert causes of action for violation of the Ohio Consumer Sales Protection Act ("OCSPA"), O.R.C. § 1345.01, *et seq.* (Count I), breach of implied warranty in tort (Count II), fraud and fraudulent concealment (Count VIII) and unjust enrichment (Count IX).  Plaintiffs also assert causes of action under the consumer protection act of each of their respective home states, including Illinois, Maryland, New Jersey, Pennsylvania, and Washington (Counts III-VII).

Plaintiffs' allegations under the OCSPA should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The OCSPA specifically mandates that it cannot apply to conduct extraterritorial to Ohio. None of the named Plaintiffs are Ohio residents or claim to have viewed any allegedly deceptive advertising in Ohio. Furthermore, Plaintiffs assert their OCSPA claim on behalf of a patently uncertifiable class comprised overwhelmingly of non-Ohio residents. This "Ohio Subclass" cannot be certified on a classwide basis for the same reasons Plaintiffs cannot assert these claims individually, and the claim should therefore be stricken pursuant to Fed. R. Civ. P. 23(c)(1)(A).

Plaintiffs' implied warranty in tort claim is preempted by the Ohio Products Liability Act, Ohio Rev. Code ("OPLA"), §2307.72, *et seq.*, enacted to abrogate all common law product liability claims or causes of action. To avoid OPLA preemption, Plaintiffs seemingly attempt to strip from class members the ability to recover for property damage due to the allegedly defective gutter system. By not expressly seeking property damage, Plaintiffs appear to contend that its implied warranty in tort claim survives OPLA preemption. But Plaintiffs' claim remains one of product liability governed by the OPLA. Plaintiffs allege that a defect in the gutter system causes rainwater that is supposed to enter the gutters to instead pass over and outside them. Plaintiffs also allege that the gutters allow debris to collect on the gutters, which requires cleaning. These are property damage claims that Plaintiffs intend to use to show defect.

What is more, Plaintiffs' self-imposed restrictions of recovery to avoid OPLA preemption has no place in the class context. Informed class members supposedly suffering property damage due to overflowing rainwater or debris accumulation will most likely opt out of a class whose representatives have voluntarily foreclosed that category of recovery at the pleading stage. This defeats the purpose of class treatment in the first place. Uninformed class members

suffering property damage will have joined a class that is intentionally designed not to compensate them for their alleged losses. The remaining class members will have either not experienced overflow or debris accumulation or, if they have, not suffered any injury because of it. Therefore, Plaintiffs' proposed class would overwhelmingly and impermissibly compensate consumers that suffered no injury, while ultimately failing to make whole any consumer alleged to have suffered property damage. Finally, the economic loss doctrine preempts tort claims where the buyers and sellers are in privity, as here. Plaintiffs cannot solely recover for economic loss in tort as a matter of law, assuming *arguendo* that their claim is not preempted by the OPLA.

Plaintiffs additionally seek to certify a Nationwide Class of consumers under the common law of 42 different states for fraud and unjust enrichment. Plaintiffs fail to set forth a *prima facie* showing that they could satisfy Fed. R. Civ. P. 23(a)'s commonality requirement or 23(b)(3)'s predominance requirement, since individual questions of law will predominate over any individualized issues.

Defendants consequently request that Counts I and II of Plaintiffs' Amended Complaint be dismissed with prejudice, and for an order striking the Nationwide Class and Ohio Subclass claims of Counts I-II and VIII-IX.

## II.    THE ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiffs allege that LeafFilter is the exclusive distributor of its proprietary LeafFilter system, a gutter system for residential and commercial buildings that permits rainwater but not leaves and other debris to flow through the LeafFilter, thereby preventing clogged gutters and resulting structural damage. (Am. Compl. ¶ 17). LeafFilter is "The Nation's Largest Gutter Protection Company" and "America's #1 Professionally Installed Gutter Guard." (*Id*. at ¶ 18).

LeafFilter has served hundreds of thousands of satisfied customers across the United States. (*Id.* at ¶ 29).

Plaintiffs detail that LeafFilter's system is a patented, three-piece system comprised of a Micromesh layer, a uPVC layer, and a structural hanger. (*Id.* at ¶ 30-33). The Micromesh layer made of surgical grade stainless steel that does not rust or corrode. (*Id.*, ¶ 31). This mesh layer is 275 microns fine, preventing debris from entering the gutter system. (*Id.*). The uPVC component of the system is manufactured with a built-in pitch to shed debris, and forms the durable gutter body that will never warp or deteriorate. (*Id.* at ¶ 32). The structural hanger component of the system securely fastens the LeafFilter system to the customer's fascia board using internal hidden hangers. (*Id.* at ¶ 33).

Despite LeafFilter's success, Plaintiffs contend that the LeafFilter system contains a latent defect. The Zilinsky Plaintiffs allege that while LeafFilter represents that the system handles heavy rainwater (see *id.* at ¶¶ 34-47), the system did not meet their expectations. That is, after a moderate to heavy rain, their mulch landscaping around their house appeared to be washed up, suggesting the gutters overflowed. (*Id.* at ¶¶ 56). The Simpson/McGinley Plaintiffs similarly complained that the gutters overflowed into their foundation and flooded their basement. (*Id.* at ¶ 76). Plaintiff Garrett Dorsey complained that during substantial rainstorms, water flowed outsider her LeafFilter gutters. (*Id.* at ¶ 87). The Dering Plaintiffs also noticed that rainwater flowed outside the gutters, and they similarly complained that pine needles accumulated outside of the gutters that needed to be cleared. (*Id.* at ¶ 109). The Armstrong Plaintiffs complained of similar issues. (*Id.* at ¶ 150).

Although certainly implied (*see, e.g.*, ¶¶ 56 & 76), conspicuously absent is any allegation that the representative Plaintiffs suffered property damage by way of the alleged defect. The

Zilinsky Plaintiffs previously alleged property damage in their original pleading, which Defendant moved to dismiss.  (*See* Doc. No. 6).

Plaintiffs amended and now allege that "[h]ad Defendant disclosed that the LeafFilter system was defective and caused rainwater to overflow during moderate to heavy rains, Plaintiffs would not have purchased the LeafFilter, or would have paid substantially less for the product." (*Id*. at ¶¶ 67; 85; 90; 102; 112).  Plaintiffs further allege that "[t]he LeafFilter defect, as well as Defendant's failure to disclose the defect to consumers, has caused Plaintiffs and class members to suffer ascertainable damages including, but not limited to, the purchase price of the LeafFilter system or, alternatively, the difference in value between the LeafFilter system as advertised and the LeafFilter system as actually sold.  (*Id*. at ¶¶ 66; 82; 88; 101; 111).

Count I of the Complaint is for violation of the OCSPA.  Plaintiffs allege that their claims and the claims of the Ohio Subclass are governed by Ohio law due to a choice of law provision contained on Defendant's website.  (Am. Compl. ¶ 136).  Plaintiffs allege that Defendant failed to disclose and actively concealed the defect in Defendant's gutter systems.  (*Id*. at ¶ 138). Instead, Plaintiffs allege that Defendant actively misrepresented that the gutter system would allow "as much water as an open gutter," would not overflow, and that debris would not accumulate on the top of the gutter systems.  (*Id*.).

Plaintiffs styled Count II of the Complaint as "Breach of Implied Warranty in Tort."  (*Id*. at Count II).  The crux of this Count is that, because of the alleged latent defect in Defendant's gutter systems, "water routinely runs over the top of the LeafFilter system and outside of the gutter altogether, and debris accumulates on top of the LeafFilter system, which results in loss of its intended and marketed purpose for the LeafFilter product[.]."  (*Id*. at ¶ 150).  Plaintiffs allege that the defect existed at the time the gutter system left Defendant's control.  (*Id*. at ¶ 151).

Plaintiffs contend that the gutter system "failed to meet the expectations of a reasonable consumer" because the "LeafFilter product does not function as a reasonable consumer would expect because rainwater does not run through it, and instead runs over the top of the LeafFilter system and outside the gutter altogether, and the supposedly maintenance free LeafFilter system allows debris to accumulate." (*Id.* at ¶ 152). Plaintiffs conclude that this defect is "the direct and proximate cause of economic loss to Plaintiffs and the Ohio Subclass members including, but not limited to, the purchase price of the LeafFilter system or, alternatively, the difference in value between the LeafFilter system as advertised and the LeafFilter system as actually sold." (*Id.* at ¶ 153).

Count VIII of the Amended Complaint is styled as "Fraud and Fraudulent Omission" and is asserted on behalf of the Nationwide Class of all purchasers of LeafFilter's gutter systems. (Am. Compl. ¶ 222). Plaintiffs frame this claim as one "under the law of fraudulent concealment of the forty-two states in which Defendants operate, which are materially the same under the laws of each state." (*id.* at ¶ 233). But Plaintiffs' fraud claim is inextricably reliant upon affirmative representations, not omissions. Plaintiffs detail numerous affirmative statements describing the gutter systems' ability to handle heavy rains. (*id.* at ¶¶ 35-47). Plaintiffs' defect claim is specifically defined by the gutter system's purported failure to match the performance described in the cited marketing materials. Although Plaintiffs claim that Defendant actively concealed the material defects with Defendant's gutter system (*id.* at ¶¶ 224-230), Plaintiffs also allege that Defendant "intentionally made false or misleading statements in order to sell its LeafFilter system" and that consumers "relied on Defendant's affirmative misrepresentations and omissions" when deciding to purchase Defendant's products. (*id.* at ¶¶ 230-231).

Plaintiffs assert Count IX for Unjust Enrichment on behalf of the Nationwide Class.

(Am. Compl. ¶ 238). According to Plaintiffs, Defendant committed wrongful acts and omissions and thus consumers paid more than the gutter systems were worth, resulting in a windfall realized to Defendant. (*Id*. at ¶¶ 239-242). Plaintiffs fail to state what choice of law applies to their claims on behalf of the Nationwide Class, although presumably they mean to apply the state law of the forty-two jurisdictions in which Defendant operates.

## III.   LEGAL STANDARD

### A.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (rejecting "conclusory allegations in the complaint that the defendant violated the law," as "the sufficiency of a complaint turns on its 'factual content'") (quoting *Iqbal*, 556 U.S. at 683).

In assessing a complaint, the Court at this stage "accepts as true all factual allegations, but … does not apply this presumption of truth to conclusory or legal assertions." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016). To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (*citing Twombly*, 550 U.S. at 555).

Further, "[f]actual allegations must be enough to raise a right to relief above the

speculative level[.]" *Id.* Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 570). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and dismissal is warranted. *Iqbal*, 556 U.S. at 679 (*citing* Fed. R. Civ. P. 8(a)(2)).

### B. Motion to Strike Classwide Allegations Pursuant to Fed. R. Civ. P. 23(c)(1)(A)

Because the class action is "an exception" to the rule that litigation is conducted on behalf of "individual named parties only," a proposed class must satisfy several "rigorous" standards. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotes omitted). First, a class must satisfy all four of the Rule 23(a) prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. *See Id.* Second, the class must fall within one of the three categories listed in Rule 23(b). *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The party seeking to bring class claims has the burden to prove that the Rule 23 certification requirements are met. *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). A failure on any requirement "dooms the class." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

"Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654

F.3d 618, 630 (6th Cir. 2011).  Pursuant to Rule 23(c)(1)(A), trial courts must determine "[a]t an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  The Sixth Circuit has specifically noted that "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)."  *Pilgrim*, 660 F.3d at 949 (quoting 7AA Charles Allen Wright *et al*., Federal Practice and Procedure § 1785).  A defendant may thus "freely move for resolution of the class-certification question whenever it wishes," and the same "rigorous analysis" standard applies.  *Id.*  Even where the defendant seeks resolution of the class question, the burden remains with the plaintiff—as the party seeking to certify a class—to meet the requisites of Rule 23.  *See, e.g.*, *Id.* at 945-46; *Barrett*, 2016 WL 865672, at *6 (noting on a motion to deny class certification that the plaintiff in a TCPA case must meet the elements of Rule 23(a) and one of the categories of Rule 23(b)); *Duckworth v. Wal-Mart Stores, Inc.*, No. 5:17-CV-174-JMH, 2018 WL 1413379, at *1 (E.D. Ky. Mar. 21, 2018) (noting, on a motion to deny certification, "[i]mportantly, '[t]he party seeking the class certification bears the burden of proof.'") (quoting *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).

Affirmatively moving to deny class certification is proper where no additional "discovery or . . . factual development would alter the central defect in th[e] class claim."  *Pilgrim*, 660 F.3d at 949; *see also Id.* ("[N]o proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification."); *Noonan v. Indiana Gaming Co.*, 217 F.R.D. 392, 394 (E.D. Ky. 2003) ("[I]n this case discovery regarding a class action would be futile."); *Duckworth*, 2018 WL 1413379, at *2 ("[N]o amount of discovery will alter the basic facts in this case that preclude class certification."); *Bearden v. Honeywell Int'l, Inc.*, 3:09-01035, 2010 WL 1223936, at *9 (M.D. Tenn. Mar. 24, 2010) ("[T]his Court has

authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR AN ALLEGED VIOLATION OF THE OCSPA AS NON-RESIDENTS OF OHIO, AND CANNOT CERTIFY AN INAPTLY-NAMED "OHIO SUBCLASS" FOR THE EXACT SAME REASON

Not a single named Plaintiff in this case is an Ohio resident. (Am. Compl. ¶¶ 4-12). Nor does a single Plaintiff allege to have purchased a LeafFilter product in Ohio, reviewed any advertising statements in Ohio, or relied on such statements in Ohio. (*See id., generally*). The same is necessarily true for the vast majority of absent class members in the Ohio Subclass. This is fatal to both Plaintiffs' ability to state a claim, as well as Plaintiffs' ability to certify an inaptly-named "Ohio Subclass" of consumers who visited Defendant's website. Consequently, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6), and the Court should alternatively strike Plaintiffs' OCSPA claim on behalf of the Ohio Subclass pursuant to Rule 23(c)(1)(A).

Plaintiffs' proposed Ohio Subclass consists of absent class members from anywhere in the nation who either (i) signed up to receive an estimate on LeafFilter's website; or (ii) registered a product warranty online. (Am. Compl. ¶¶ 123). Plaintiffs' theory is that because LeafFilter's website contains a choice-of-law provision stating that the parties' "rights and obligations shall be governed by and interpreted in accordance with Ohio law" (Am. Compl. ¶ 136), any consumer that used the LeafFilter website at any time prior to or after the point of sale is entitled to bring a claim under the OCSPA. Not so.

Both the plain language of the OCSPA and courts interpreting the statute are clear that the OCSPA only covers conduct which occurs *in Ohio*, and conduct which impacts *Ohio residents*. The OCSPA plainly states that "[t]he courts of common pleas, and municipal or

county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice *in this state* covered by sections 1345.01 to 1345.13 of the Revised Code," or with respect to any claim arising from a consumer transaction subject to such sections. *See* O.R.C. § 1345.04 (emphasis added). Consequently, "courts have jurisdiction over claims related to acts or practices 'in this state' [which] indicates that 'the statute [OCSPA] is only applicable *if the offending conduct took place within the territorial borders of the state of Ohio*." *Delahunt v. Cytodyne Tech.*, 241 F.Supp.2d 827, 839 (S.D. Ohio 2003) (*citing Shorter v. Champion Home Builders Co.*, 776 F.Supp. 333, 338-39 (N.D. Ohio 1991)) (emphasis added).

To determine where the offending conduct occurred in the context of a consumer transaction, a court must examine where the allegedly offensive representations were received and relied upon. *See Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 573 (N.D. Ohio 2003) ("[T]he places where the conduct causing the injury occurred (i.e., where the alleged misrepresentations were made) … are the overriding factors for consideration in fraud and misrepresentation cases."); *Delahunt*, 241 F.Supp.2d at 839 ("[C]laims asserted under the OCSPA asserted on behalf of proposed class members whose purchase of ... [the subject product] did not take place in Ohio [is] barred by the jurisdictional provision of the statute.") (internal quotations omitted); *Pilgrim v. Universal Health Card, LLC*, 5:09CV879, 2010 WL 1254849, at *3 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (granting motion to strike a nationwide class of consumers in a false advertising case under the OCSPA because "[i]t is undisputed that the place of injury for these actions is the home state of the individual class members."); *Loreto v. Proctor & Gamble Co.*, 737 F.Supp.2d 909, 917 (S.D.Ohio 2010), *aff'd in relevant part* 515 Fed. Appx. 576, 578 (6th Cir. 2013) (class representatives who purchased the offending product in New Jersey "have no standing to pursue claims under the

OCSPA"); *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App.3d 299, 305–06 (2006) (rejecting a claim that the OCSPA should apply because "Progressive is headquartered in Ohio [and] the policies and procedures [at issue] emanate from Ohio").

Plaintiffs argue that any consumer which "utilized Defendants' website to request an estimate and/or register their warranties" must be able to bring a claim under the OCSPA due to the website's choice of law terms. (*See* Am. Compl.,¶ 137). But the forum selection clause contained on LeafFilter's website cannot create a cause of action that is expressly barred by the OCSPA's jurisdictional limits. O.R.C. § 1345.04. Moreover, Plaintiffs' proposed Ohio Subclass would essentially force absent, out-of-state class members to litigate their claims under Ohio law.

Plaintiffs' allegations substantially mirror the above-referenced cases where courts held that out-of-state parties could not state a cause of action under the OCSPA. In *Pilgrim*, the court struck class allegations brought under the OCSPA on behalf of a nationwide class pertaining to an online program for discounted health benefits. *Pilgrim*, 2010 WL 1254849, at *3. The court held that Ohio law could not apply to the out-of-state, absent class members, despite the fact that the defendant was headquartered in Ohio, created the false advertising in Ohio, and offered the allegedly offending program via an Ohio-based website. *Id.* In doing so, the court held that "[i]t is undisputed that the place of injury for these actions is the home state of the individual class members." *Id.* The Sixth Circuit later affirmed this decision, holding "the strongest interest in regulating such conduct is the State where the consumers—the residents protected by its consumer-protection laws—are harmed by it. *Pilgrim*, 660 F.3d at 946. The Sixth Circuit reasoned:

> Does anyone think that, if State A opted to attract telemarketing companies to its borders by diluting or for that matter eliminating any

> regulation of them, the policy makers of State B would be comfortable
> with the application of the "consumer-protection" laws of State A to their
> residents—the denizens of State B? Highly doubtful: the idea that "one
> state's law would apply to claims by consumers throughout the country—
> not just those in Indiana, but also those in California, New Jersey, and
> Mississippi—is a novelty." *In re Bridgestone/Firestone, Inc.*, 288 F.3d
> 1012, 1016 (7th Cir.2002); *see also id.* at 1018 ("We do not for a second
> suppose that Indiana would apply Michigan law to an auto sale if
> Michigan permitted auto companies to conceal defects from customers;
> nor do we think it likely that Indiana would apply Korean law (no matter
> what Korean law on the subject may provide) to claims of deceit in the
> sale of Hyundai automobiles, in Indiana, to residents of Indiana....").

*Id*. at 947.

In *Loreto*, New Jersey resident plaintiffs attempted to assert a claim for false advertising under the OCSPA. 737 F. Supp. 2d at 916. The plaintiffs conceded that the only ties the case had to Ohio was the fact that defendant was headquartered there. *Id*. Since plaintiffs were not residents of Ohio, and the place of injury was plaintiffs' home state, where the advertising was viewed and relied upon, the court held that plaintiffs could not assert a claim under the OCSPA and granted defendant's motion to dismiss with prejudice. *Id*. at 917. The Sixth Circuit later affirmed the court's holding as to plaintiffs' inability to assert a claim under the OCSPA. *See Loreto v. Procter & Gamble Co.*, 515 Fed. Appx. 576, 578 (6th Cir. 2013).

Similarly in *Delahunt*, an Ohio consumer who purchased an allegedly dangerous dietary supplement filed a nationwide class action lawsuit against the manufacturer and the retailer of the drug, alleging that defendants' unfair and deceptive advertising and labeling of the supplement constituted violations of the OCSPA. *Delahunt*, 241 F.Supp.2d at 830-31. The defendants jointly moved to dismiss and alternatively strike the OCSPA claim to the extent that it sought to impose liability for acts occurring outside of Ohio. *Id*. at 839. The court, applying OCSPA § 1345.04 and the holding in *Shorter*, dismissed any claims brought on behalf of class

member who did not purchase the supplement within the state of Ohio due to the jurisdictional requirements of the OCSPA.  *Id*. at 839.

As a final matter, not only is Plaintiffs' attempted circumvention of Rule 23's requirements to certify a broad class of consumers legally prohibited, it is also fundamentally unfair to absent class members who may wish to have their claims heard under their own consumer protection statute.  *Pilgrim*, 660 F.3d at 946-47.  Plaintiffs ask this Court to bypass the provisions of absent class members' consumer protection laws without even attempting to analyze how the interests of those states might be affected.

The OCSPA claims asserted against Defendant on behalf of putative class members who visited its website in states other than Ohio are barred by the jurisdictional provision contained in § 1345.04.  Plaintiffs may not cast the net of Ohio law into these jurisdictions to evade the requirements of Rule 23 based on a forum selection clause.  This is because, "the offending conduct" allegedly violating the OCSPA, *i.e.* the advertisements, clearly did not "t[ake] place within the territorial borders of the state of Ohio."  *Delahunt*, 241 F.Supp.2d at 839. Consequently, as Plaintiffs are non-Ohio residents, allegedly injured by non-Ohio conduct, the very language of the OCSPA and the cases interpreting it preclude Plaintiffs' efforts to assert claims on behalf of thousands of other non-Ohio residents purporting to have suffered similar non-Ohio injuries vis-à-vis a single, omnibus law.  Because this defect cannot be cured, Plaintiffs' claims under the OCSPA should be dismissed pursuant to Rule 12(b)(6), and Plaintiffs' class claims should be denied under Rule 23(c)(1) for failure to satisfy Rule 23(b)(3).

## V.  THE OPLA PREEMPTS PLAINTIFFS' BREACH OF IMPLIED WARRANTY IN TORT CLAIM, AND AS A CLASS IS IMPERMISSIBLY OVERBROAD

### A.  The OPLA Preempts Plaintiffs' Implied Warranty In Tort Claim

Defendant previously moved to dismiss Plaintiffs' implied warranty in tort claim

pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of OPLA preemption. (*See* Doc. No. 6). In response to this motion, Plaintiffs filed the Amended Complaint, carefully deleting any reference to "property damage" caused by the allegedly defective gutter systems. (*See* Am. Compl., *generally*). But this amendment merely underscores the problem with Plaintiffs' claims. Under Ohio law, the OPLA is the sole source of recovery for damages based on a product liability claim. *See Delahunt*, 241 F. Supp. 2d at 842 (*citing* Ohio Rev. Code § 2307.72(A), (B)). Plaintiffs' Count II for Breach of Implied Warranty in Tort on behalf of the proposed Ohio Subclass alleges that the "[gutter] system contains a latent defect that causes water to routinely run over the top of the LeafFilter system and outside of the gutter altogether, and debris to accumulate on top of the LeafFilter system, which defeats the intended and marketed purpose[.]" (Am. Compl. ¶ 150). It is a product liability claim.

The current version of OPLA, enacted on April 7, 2005, makes clear its intent: "to abrogate all common law product liability claims or causes of action." R.C. § 2307.71(B).

As defined within OPLA:

> "Product liability claim" means a claim that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, ***or physical damage to property other than the product in question***, that allegedly arose from any of the following: (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) Any warning or instruction, or lack of warning or instruction, associated with that product; (c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(A)(13) (emphasis added).

In broadly defining "product liability claim" in this Section, the Ohio General Assembly evinced a clear mandate to treat all claims arising from the design, manufacturing, marketing, warning, warranty or representation of a product as "product liability claims" exclusively

defined, remedied, and governed by OPLA. *See Beckemeyer v. Gelco Corp.*, No. 1:17CV695, 2019 WL 952733, at \*2 (S.D. Ohio Feb. 27, 2019) *citing Krumpelbeck v. Breg, Inc.*, 491 Fed.Appx. 713, 715 (6th Cir. 2012) ("The OPLA expressly abolished all common law product liability claims."). Consequently, the essential nature of the substantive allegations of a claim should guide courts, not the artificial label that a plaintiff attaches to that claim. *See Lawyer's Cooperative v. Muething*, 65 Ohio St.3d 273, 277-78 (1992).

"Considering this statutory language, courts have routinely dismissed non-statutory product liability claims brought under Ohio law," including breach of implied warranty claims asserted under Ohio common law. *McKinney v. Microsoft Corp.*, No. 1:10-CV354, 2011 WL 13228141, at \*7 (S.D. Ohio May 12, 2011) (dismissing non-statutory product liability claims for fraudulent misrepresentation, fraudulent concealment, negligence, and breach of implied warranty in connection with a video game system defect which allegedly caused the product to fail); *see also Miller v. ALZA Corp.*, 759 F.Supp.2d 929, 943-44 (S.D. Ohio 2010) (the OPLA abrogated common law claims of negligence, breach of express warranty and breach of implied warranty claims); *Miles v. Raymond Corp.*, 612 F.Supp.2d 913, 923 (N.D. Ohio 2009) (dismissing common law negligence and breach of implied warranty claims); *Tompkin v. Am. Brands*, 219 F.3d 566, 575 (6th Cir. 2000) (holding that "common law negligence claims have been preempted by OPLA" in action brought against cigarette manufacturers); *Duffey v. Rust-Oleum Corp.*, No. 2:19-CV-775, WL 4933894, at \*2 (S.D.Ohio, Aug. 24, 2020) ("[Plaintiff's claims] are all subsumed under the Ohio Product Liability Act ("OPLA"), which preempts Plaintiff's common law product liability claims and negligence claims."); *Hempy v. Breg, Inc.*, No. 2:11-CV-900, 2012 WL 380119, at \*3 (S.D. Ohio Feb. 6, 2012) (where the court held that the OPLA preempts Plaintiff's claims for negligence, breach of express warranty, breach of

implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose in connection with an allegedly defective knee pain pump); *Krumpelbeck v. Breg, Inc.*, 491 Fed.Appx. 713, 721 (6th Cir. Aug. 10, 2012) ("Because they were abrogated by the 2005 amendment to the OPLA . . . the district court properly granted summary judgment on [Plaintiff's] common law claims of breach of express warranty, breach of implied warranty, and negligent misrepresentation and fraud."); *Volovetz v. Tremco Barrier Sols., Inc.*, 2016-Ohio-7707, ¶ 34, 74 N.E.3d 743, 753 (affirming dismissal of product liability claims for negligent installation of basement waterproofing system as preempted by the OPLA).Here, Plaintiffs seek economic damages based on the cost of the gutters due to an allegedly latent defect in their gutter systems. Plaintiffs have called this implied warranty in tort, but it is a product liability claim. And it is abrogated by the OPLA irrespective of Plaintiffs' attempts to plead around it by eliminating all references to property damage. *McKinney v. Microsoft Corp.*, No. 1:10-CV-354, 2011 WL 13228141, at *6 (S.D. Ohio May 12, 2011) (dismissing implied warranty claim, among others, because it is "abrogated by the OPLA" despite finding the alleged defect affected only the device itself).

### B. By Whatever Name, Plaintiffs' Implied Warranty In Tort Class Is Overbroad and Uncertifiable

Plaintiffs allege that the gutter system is defective because it allows water to run over and outside the gutter and allows debris to accumulate on top of it. Plaintiffs do not contend that the alleged overflow or accumulation has harmed, or will harm, them or their property. But, they do not disclaim it, either. Instead, Plaintiffs sue for vague damages, "including, ***but not limited to***, the purchase price of the LeafFilter system or, alternatively, the difference in value between the LeafFilter system as advertised and the LeafFilter system as actually sold." (*Id*. at ¶¶ 66, 82, 88, 101, 111 & 153) (emphasis added). At least one set of Plaintiffs details the foundational

flooding they allege to have encountered by way of Defendant's gutter system. (*Id.*, ¶ 76).

To the extent Plaintiffs seek purely economic damages, this claim fails. Plaintiffs would seek recompense for any consumer that purchased Defendant's gutter system, regardless of whether the consumer still owned the property at which the system was installed or whether any individual class member actually experienced overflow or debris accumulation, much less damage to person or property.

In short, Plaintiffs are asking to create a large class of "no injury" consumers who receive compensation regardless of whether the gutters caused any harm. *See, e.g., Mitchell v. Proctor & Gamble*, 2:09-CV-426, 2010 WL 728222, at *4 (S.D. Ohio Mar. 1, 2010) (holding the OPLA preempted a claim seeking damages "equal to the difference in the market value of the product actually received and the value it represented" where plaintiff's proposed class would compensate consumers for a drug that did not cause side effects in all consumers); *Meta v. Target Corp.*, 74 F. Supp. 3d 858, 864 (N.D. Ohio 2015) (plaintiff's claims were preempted by the OPLA where plaintiff claimed only economic losses for a product which clogged his septic system, but where the vast majority of product users did not suffer the same problem). As alleged, Plaintiffs' proposed class is impermissibly overbroad because it "include[s] members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm." *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D.Ohio 2001) (finding proposed class definition to be overbroad where the class comprised of consumers who suffered no harm by way of a defendant's illegal practices, and who had moved out of defendant's service area and therefore were not at risk of future harm). Such a class "includes significant numbers of consumers who have not suffered any injury or harm." *Loreto v. Procter & Gamble Co.*, 1:09-CV-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013) (striking overly broad class

definition where only a few thousand individuals out of a million purchasers were ever exposed to the allegedly offensive advertisement). If "individualized fact-finding" is necessary to ascertain which class members were actually injured, class treatment is inappropriate. *Romberio v. UNUMProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009).

*Meta* is directly on point. In *Meta*, the plaintiff claimed to have suffered property damage when toilet wipes advertised as "flushable" backed up his septic system and caused property damage. *Meta*, 74 F. Supp. 3d at 860. Defendant then moved to dismiss plaintiff's class action complaint on the basis of OPLA preemption. *Id*. at 861. In response, Plaintiff disclaimed any alleged property damage and claimed he was entitled to the "difference between the value of the product advertised to consumers and the allegedly defective product Mr. Meta claims he received." *Id*. at 862. The court held that there was a quite obvious problem with plaintiff's proposed class: "the consumers (and vast majority of putative plaintiffs) in this case who bought the Up and Up® wipes and used them for their intended purpose, flushed them, and suffered no injury and were not damaged." *Id*. The Court held that either a plaintiff had suffered an actual injury and could recover pursuant to the OPLA, or a consumer had not suffered an actual injury. *Id*. However, a consumer could not state a claim solely for economic loss for a product which otherwise met the consumer's expectations. *Id*. Like *Meta*, Plaintiffs' proposed classes would compensate all purchasers of a gutter system, even if the gutter system met their expectations.

Similar is *Mitchell*, where a consumer sued over alleged unwanted side effects caused by a medication. 2010, WL 728222, at *1. Plaintiff attempted to disclaim any personal injuries caused by the medication and instead sought economic damages alone, *i.e.*, the difference between what the consumer paid for the product and the actual value of the allegedly ineffective

product that caused unwanted side effects. *Id*. at *4. The court recognized that the proposed class created the type of circumstance where a court "could not make out an injury" to proposed putative class members. *Id*. at *3. That is, the harm of the unwanted side effects from medication and the economic loss caused by purchasing a product are one in the same. *Id*. at *4. Had the product not caused unwanted side effects, there would be no harm at all and, therefore, no economic loss. Consequently, "Mitchell's claims under the OCSPA, however labeled, are essentially products liability claims, similar to those claims found to have been preempted by the OPLA by other courts in this jurisdiction." *Id*. at *5.

Where, as here, thousands of class members would be compensated in spite of no actual injury to either the gutter system or to class members' property, or where the consumer might no longer own the property where the gutter system was installed and thus could not experience problems in the future, "the only way to distinguish between the two sets of individuals is to engage in individualized fact-finding," which "makes the . . . class definition unsatisfactory." *Romberio*, 385 F. App'x at 431; *see also Meta*, 74 F. Supp. 3d at 864 (distinguishing class members in *Mitchell* who experienced "physical illness" from those who "never suffered any negative side effects"). And because Plaintiffs seek to compensate all consumers who purchased Defendant's gutters systems after requesting an estimate online or registering the product warranty, Plaintiffs' proposed classes and subclasses are overbroad because they would include thousands of consumers who suffered no injury, and/or will not suffer an injury in the future, and thus have no standing to bring claims or recover on them.

### C. Even if Plaintiffs' Claims Were Not Preempted, They Are Barred By The Economic Loss Doctrine

As a final matter, even if Plaintiffs' Implied Warranty In Tort claim were not outright preempted by the OPLA (which Defendant does not concede), this claim fails as a matter of law.

If Plaintiffs seek to recover in tort for pure economic loss while in privity with Defendant, Plaintiffs' claims would be barred by Ohio's economic loss rule.

"Under the economic loss rule, plaintiffs who have only suffered an economic loss from a defective product—defined as losses attributable to the decreased value of the defective product itself (direct economic loss) and consequential losses by the purchaser of the defective product (indirect economic loss)—cannot recover economic losses premised on tort theories of recovery." *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 2015-Ohio-4884, ¶ 26 (*citing Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 43–45, 50–51; *Corporex Dev. & Constr. Mgt., Inc. v. Shook*, 106 Ohio St.3d 412, 414, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6 ("The economic-loss rule generally prevents recovery in tort for damages for purely economic loss.")); *see also In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 856 (6th Cir. 2013) ("Ohio law permits ordinary consumers ***who are not in privity of contract with product manufacturers*** to bring claims such as negligent design and negligent failure-to-warn in order to recover damages for economic injury only") (emphasis added); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d 942, 949 (N.D. Ohio 2009), *as amended* (Nov. 4, 2009) ("[T]he foundational doctrinal distinction in the economic loss rule jurisprudence is whether the parties are in privity of contract. In cases of contractual privity, courts apply a strong version of the economic loss rule.") (internal citations omitted).

Plaintiffs are asking for relief in the form of either (i) the purchase price for Defendant's gutter system; or (ii) the difference between the gutter system as advertised and as sold. (Am. Compl. ¶ 153). Plaintiffs allege that Defendant is the "exclusive distributor" of the LeafFilter gutter systems, that they each bought systems from Defendant, and that their gutters came with

Defendant's express warranty. (*Id*. at ¶¶ 17; 19; 51; 53; 69-70; 84-85; 94; 96; 105; 107). Consequently, Plaintiffs' claims—if they were to survive OPLA preemption—fall squarely within the economic loss doctrine as consumers in direct privity with Defendant.

* * *

In sum, Count II is either a product liability claim where a consumer suffered property damage, or it is no claim at all. The OPLA properly provides for Plaintiffs' exclusive remedy for a consumer alleging to have suffered property damage. O.R.C. § 2307.71(B). And, if a consumer did not suffer property damage, there is no clear basis to compensate the consumer at all. Consumers in privity of contract with sellers cannot state a claim in tort for sole economic loss. Thus, the Court should dismiss Plaintiffs' Breach of Implied Warranty in Tort claim, with prejudice, for failure to state a claim for relief.

## VI. PLAINTIFFS CANNOT SATISFY COMMONALITY OR PREDOMINANCE FOR THEIR FRAUD AND FRAUDULENT CONCEALMENT COUNT UNDER RULE 23 DUE TO VARYING STATE LAW STANDARDS

Plaintiffs attempt to assert claims styled as "Fraud and Fraudulent Concealment" on behalf of the Nationwide Class. In doing so, Plaintiffs allege that this claim is asserted "under the law of fraudulent concealment of the forty-two states in which Defendant operates, which are materially the same under the law of each state." (Am. Compl. ¶ 223). Plaintiffs offer no support for this self-serving, conclusory allegation that there are no material differences in the law of 42 different states. Nor do they even attempt to compare common law fraud claims in these 42 jurisdictions. What is more, Plaintiffs' claims are premised upon affirmative statements, not omissions. Indeed, Plaintiffs contend the gutter system is defective specifically because it does not match Defendant's marketing representations. Courts routinely reject fraud claims on behalf of nationwide classes due to the fact that there are numerous variances between

each state's common law. For this reason, Plaintiffs' claims fail Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

Rule 23(a)'s commonality element requires Plaintiffs to prove that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)(2), a plaintiff's "claims must depend upon a common contention.... [which is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The crucial inquiry is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*.

Under Rule 23(b)(3), the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

To adjudicate potential class members' claims and Defendant's defenses, the Court will be required to resolve the differing common law of forty-two states where Defendant operates and how each state's law applies to the specific marketing materials available to consumers and which they saw and/or relied upon. Although Plaintiffs label their claims as those of fraud by material omission, the claims cannot survive absent the alleged affirmative representations that Plaintiffs detail in the Amended Complaint. That is, Plaintiffs allege that Defendant advertised the efficacy of the gutter systems during especially heavy rainfalls, but in Plaintiffs' experience the product did not perform as advertised. (Am. Compl. ¶¶ 35-37; 46-47). Some Plaintiffs also allege that they were required to clean the gutter systems to keep them in working condition, in

spite of affirmative representations relating to the low maintenance or maintenance-free nature of the gutter systems.  (Am. Compl. ¶¶ 38; 41-44).  Plaintiffs all claim to have reviewed and relied on this affirmative marketing.  (Am. Compl. ¶¶ 49-50; 70-72; 85-86; 92-93; 103-104).  Absent these affirmative representations, Plaintiffs lack the ability to state a claim.

The individualized nature of these issues precludes commonality and predominance of class issues.  *See, e.g., Pilgrim*, 660 F.3d at 946 (affirming the decision to strike class allegations on the basis that it would be impossible to establish predominance due to vastly different state laws governing class members' claims); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules.  Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3).  Yet state laws about theories such as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes.") (collecting cases); *Cowit v. CitiMortgage, Inc.*, 1:12-CV-869, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (striking plaintiff's nationwide common law fraud class claims on the basis that "[e]ach putative class member's common law claims would likely be governed by the state in which the property securing the loan was located," making classwide treatment inappropriate); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) ("If the proposed class were to be certified, the Court would be forced to engage in individual inquiries of each class member with respect to materiality of the statement, whether the member saw Apple's advertisements or visited Apple's website, and what caused the member to make the purchase.  Moreover, since Yonai purports to bring a nationwide class action, these individual inquiries very likely would be subject to the differing state laws that may or may not apply."); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 233 (S.D.N.Y.

2002) ("The plaintiff seeks a nationwide class action based on a state common law cause of action, fraud, and a New Jersey statutory claim under the NJCFA. Neither cause of action would result in the application of a common legal rule to claims of class members, and consequently, the plaintiff fails to satisfy the commonality requirement.").

Questions of law will vary significantly across the alleged nationwide class, such as those of consumer reliance on Defendant's advertisements and the materiality of those advertising statements. Ohio choice-of-law principles require this Court to apply the law of the state where each class member's injury occurred to that class member's claims. *See Pilgrim*, 660 F.3d at 946 ("Under [Ohio law], the place of the injury controls in a consumer-protection lawsuit, requiring application of the home-state law of each potential class member."); *see also Muncie Power Prods., Inc. v. United Techs. Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (federal courts sitting in diversity must apply the choice-of-law rules of the forum state). As each class member's state common law will govern his or her claims, the nationwide class claims in this case cannot satisfy Rule 23 requirements.

## VII. PLAINTIFFS CANNOT CERTIFY A NATIONWIDE CLASS OF CONSUMERS UNDER THE VARYING STATE LAW STANDARD FOR UNJUST ENRICHMENT

It is well-established that varying state laws preclude a plaintiff from pursuing an unjust enrichment claim on behalf of a nationwide class. *See, e.g., Colley v. Procter & Gamble Co.*, 1:16-CV-918, 2016 WL 5791658, at *7 (S.D. Ohio Oct. 4, 2016) (Watson, J.) (striking nationwide unjust enrichment claims because "some states do not recognize unjust enrichment as an independent cause of action, and many states require a plaintiff to demonstrate that he lacks an adequate remedy at law to bring an unjust enrichment claim."); *Cowit v. CitiMortgage, Inc.*, 1:12-CV-869, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (striking nationwide class

allegations for unjust enrichment and common law fraud claims "due to the considerable variation in the state laws governing them").

Since Plaintiffs attempt to assert unjust enrichment claims on behalf of a proposed Nationwide Class and allege that consumers will reside in no less than 42 different states (*see* Am. Compl. ¶ 19), Plaintiffs will be unable to satisfy the commonality or predominance standards set forth under Fed. R. Civ. P. 23. By way of example, Plaintiff Garrett Dorsey is a New Jersey resident, which does not even recognize unjust enrichment as an independent cause of action. *See, e.g., Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636, 644 n.11 (D.N.J. 2005) (applying New Jersey law) ("[T]he Court will treat the Plaintiffs' unjust enrichment claim as subsumed by their other tort claims, not as an independent cause of action."). States vary as to the level of knowledge and/or misconduct on the defendant's part required to make out an unjust enrichment claim. *See Vista Healthplan, Inc. v. Cephalon, Inc.*, 2:06-CV-1833, 2015 WL 3623005, at *28 (E.D. Pa. June 10, 2015) (collecting cases). States also follow different rules as to the availability of defenses, including laches and unclean hands, including Illinois, where the Zilinsky Plaintiffs reside. *See, e.g., Sundance Homes, Inc. v. County. of DuPage*, 746 N.E.2d 254, 263, 287 (Ill. 2001) (noting "laches analysis is no longer mechanically applied to all actions denominated equitable" and allowing only a statute of limitations defense for unjust enrichment action); *see also Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense."). This Court should therefore strike the Nationwide Class claim for unjust enrichment based on these many variations.

## VIII. CONCLUSION

For the reasons articulated above, LeafFilter respectfully requests that the Court (i) dismiss Count I and II of Plaintiffs' Amended Complaint with prejudice; (ii) strike the classwide claims asserted on behalf of the Ohio Subclass for Count I and II of Plaintiffs' Amended Complaint; and (iii) strike the classwide claims asserted on behalf of the Nationwide Class for Count VIII and IX of Plaintiffs' Amended Complaint; and (iv) award all other relief the Court deems fair and just.

Respectfully submitted,

*/s/ Gregory J. Phillips*
GREGORY J. PHILLIPS (0077601)
TREVOR COVEY (0085323)
MICHAEL MEYER (0087953)
SUZANNE M. ALTON DE ERASO (admitted *pro hac vice*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: gphillips@beneschlaw.com
tcovey@beneschlaw.com
mmeyer@beneschlaw.com
saltondeeraso@beneschlaw.com

*Attorneys for Defendant LeafFilter North, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2021, a copy of the foregoing **Defendant LeafFilter North, LLC's Motion for Partial Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike the Nationwide and Ohio Subclass Claims Pursuant to Fed. R. Civ. P. 23(c)(1)(A)** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

 */s/ Gregory J. Phillips*
*One of the Attorneys for Defendant*
*LeafFilter North, LLC*