## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JAMES ZILINSKY, GERALDINE ZILINSKY, CORY SIMPSON, MEAGAN McGINLEY, SANDRA GARRETTDORSEY, BRIAN DERING, THERESA DERING, ALAN ARMSTRONG, and SANDY ARMSTRONG, individually and on behalf of all others similarly situated, | ) CASE NO. 2:20-cv-6229-MHW-KAJ<br>)<br>)<br>) JUDGE MICHAEL H. WATSON<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| LEAFFILTER NORTH, LLC, | )<br>) |
| Defendant. | )<br>) |

---

### PLAINTIFFS' MEMORANDUNUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

## I.     PRELIMINARY STATEMENT

Named Plaintiffs James Zilinsky, Geraldine Zilinsky, Cory Simpson, Meagan McGinley, Sandra GarrettDorsey, Brian Dering, Theresa Dering, Alan Armstrong, and Sandy Armstrong ("Named Plaintiffs") have reached an agreement with Defendant LeafFilter North, LLC ("Defendant" or "LeafFilter") to settle this class action on the terms set forth in the Settlement Agreement, Exhibit 1 hereto. The proposed Settlement Class is defined to include Named Plaintiffs and a limited and specific subset of LeafFilter customers who share two defining features:  (1) they all had debris building up on top of their LeafFilter Gutter System; and (2) they all had LeafFilter open a service ticket relating to Debris Accumulation.   The relief provided by the proposed

1

Settlement is targeted to the exact issue experienced by these customers – Debris Accumulation.[1] Under the Settlement, LeafFilter has agreed to provide each Settlement Class Member transferrable vouchers for up to three future debris cleanings (total value $285) at no cost, or reimbursement for up to $200 in out of pocket expenses the Settlement Class Member previously incurred.  The Settlement, if approved, will resolve all claims asserted against Defendant in this class action.

The proposed Settlement was reached at a time when the Parties understood the strengths and weaknesses of their respective positions. Named Plaintiffs, through their counsel, conducted an extensive investigation of their claims, filed a complaint, an amended complaint, briefed a motion to strike class allegations and a motion to dismiss, and undertook significant fact discovery.

Named Plaintiffs and Defendant also engaged in extensive arm's-length settlement negotiations and participated in mediation under the supervision of a respected neutral mediator, Hunter Hughes, Esq.[2] The mediation ultimately resulted in the Settlement Agreement. Named Plaintiffs, based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation, submit that the proposed Settlement is in the best interests of the Settlement Class and will provide an immediate meaningful recovery.

Named Plaintiffs request that the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, finding that the Court will likely be able to approve the proposed Settlement as fair, adequate, and reasonable and certify the proposed Settlement Class; appointing Named Plaintiffs as the representatives of the Settlement Class; appointing Varnell & Warwick, P.A., and Goldenberg Schneider, L.P.A. as Class Counsel; appointing KCC as the

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning ascribed to them in the Settlement Agreement.

[2] Mr. Hughes' extensive resume is attached hereto as Exhibit 2.

Settlement Administrator; approving the form, content, and method of Notice; establishing procedures for notice to Class Members, and for Class Members to object to the Settlement, opt out of the Settlement, and make claims under the Settlement; scheduling deadlines for the filing of papers in support of final approval, and in support of attorneys' fees, reimbursement of expenses, and requested awards for service payments; scheduling the Fairness Hearing; and establishing other requirements and procedures necessary to effectuate the Settlement.

Given the substantial benefits available to Settlement Class Members, and the risks in establishing Defendant's liability and proving damages, Named Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, as further described below.

## II.      FACTUAL BACKGROUND

On January 3, 2020, Plaintiffs James and Geraldine Zilinsky filed a Class Action Complaint [Doc. 1] against Defendant alleging that LeafFilter Gutter Systems contain a defect that causes debris to accumulate on top of the LeafFilter system and rainwater to flow over the top of the LeafFilter system. The Class Action Complaint asserted claims for (1) violation of the Ohio Consumer Sales Practices Act, (2) breach of the implied warranty in tort, (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, (4) fraud and fraudulent concealment, and (5) unjust enrichment on behalf of a nationwide class (and Illinois subclass) of purchasers of LeafFilter Gutter Systems.

On April 1, 2021, Plaintiffs filed the First Amended Class Action Complaint [Doc. 19], which added seven additional named plaintiffs (Cory Simpson, Meagan McGinley, Sandra GarrettDorsey, Brian Dering, Theresa Dering, Alan Armstrong, and Sandy Armstrong), four additional state subclasses (Maryland, New Jersey, Pennsylvania, and Washington), and four additional claims (violation of the Maryland Consumer Protection Act, violation of the New Jersey

Consumer Fraud Act, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and violation of the Washington Consumer Protection Act).

Defendant moved to dismiss the First Amended Class Action Complaint and strike its class allegations [Doc. 30] on April 29, 2021. Plaintiffs filed their opposition memorandum [Doc. 33] on May 27, 2021. And Defendant filed its reply brief [Doc. 36] on June 17, 2021. While Defendant's motion was pending, the Parties engaged in substantial formal and informal discovery, including the production of more than 45,000 pages of documents by Defendant. *See* Declaration of Brian Warwick ("Warwick Decl."), Ex. 3 hereto, at ¶4. On January 25, 2022, the parties jointly moved the Court to stay [Doc. 46] the proceedings to allow the parties to attempt to resolve their dispute through mediation. The Court granted the motion [Doc.47]. The Parties engaged in mediation with the assistance of a respected and experienced neutral, Hunter Hughes, Esq. The mediation process was extended, at times contentious, and always adversarial. Warwick Decl., ¶5-6, 21. The Parties advised the Court in multiple Joints Status Reports (Docs. 48, 50, and 52) that they were continuing to work on the details of the proposed settlement, and in fact, as late as June 3, 2022, reported that there was a possibility that they would not be able to reach final agreement. Doc. 52. Ultimately, with the assistance of Mr. Hughes, the mediation process was successful. Plaintiffs now move the Court to preliminarily approve the proposed Settlement.

Named Plaintiffs' Counsel have reviewed and analyzed the documents produced by Defendant and those obtained through their own considerable investigation; consulted with experts; spoken with hundreds of LeafFilter customers and numerous former employees and independent contractors; examined and considered the benefits to be provided to the Class Members under the Settlement; and considered the laws of the several States and the claims that

could be asserted under those laws regarding LeafFilter Gutter Systems. Warwick Decl., ¶21; Declaration of Jeffrey S. Goldenberg ("Goldenberg Decl."), Ex. 4 hereto, at ¶5.

Named Plaintiffs and their Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of the Class Members, taking into account the benefits provided to the Class Members through the terms of the Settlement, the risks of continued litigation and possible trial and appeals, and the length of time and the costs that would be required to complete the litigation. Warwick Decl., ¶22-26; Goldenberg Decl., ¶6.

## III.      PRIMARY TERMS OF THE SETTLEMENT AGREEMENT

### A.  <u>Relief Offered</u>

The relief provided by this Settlement is directed at debris accumulation. *See* Doc. 19 at, e.g., ¶1 (alleging a latent defect exists in the LeafFilter Gutter System that causes "debris to accumulate on top of the LeafFilter system that must be cleaned off by the homeowner."). If a LeafFilter customer complains about debris and requests a service call, a LeafFilter representative comes to the customer's home and removes any debris on top of the LeafFilter Gutter System, a service for which it charges $95. Declaration of Rocco Mango ("Mango Decl."), Ex. 5, ¶8.

Under the Settlement, LeafFilter has agreed to provide each Settlement Class Member fully transferrable vouchers for up to three future debris cleanings (total value $285) at no cost, or reimbursement for up to $200 in out of pocket expenses the Settlement Class Member previously incurred. Settlement Class Members can select one (1) of the following forms of relief:

<u>Benefit 1: Reimbursement of up to $200 for two prior Debris Removal Cleanings</u>. Claims for reimbursement shall be supported by Proof of Expense demonstrating that the Settlement Class Member paid out of pocket money to specifically remove Debris Accumulation. The maximum amount of each individual reimbursement is not to exceed $100, and the total amount of

reimbursement shall not exceed $200. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation.

Benefit 2: Reimbursement of up to $100 for one prior Debris Removal Cleaning, and Vouchers for two future Debris Removal Cleanings. Claims for reimbursement shall be supported by Proof of Expense demonstrating that the Settlement Class Member paid out of pocket money to specifically remove Debris Accumulation. The maximum amount of such reimbursement is not to exceed $100. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation. Settlement Class Members will also receive two, fully transferrable Vouchers for future Debris Removal Cleanings.[3]

Benefit 3: Vouchers for three future Debris Removal Cleanings. Settlement Class Members will receive three, fully transferrable Vouchers for future Debris Removal Cleanings. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation.

Benefit 4: Reimbursement of up to $200 for costs related to the removal of the LeafFilter Gutter System because of Debris Accumulation problems. Claims for reimbursement shall be supported by Proof of Expense demonstrating that the Settlement Class Member paid out of pocket money to remove the LeafFilter Gutter System. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation and that the system was removed for that reason.

---

[3] The Voucher cleanings are to be performed by LeafFilter or its agents and shall be performed within thirty (30) days of request by the Settlement Class Member. If LeafFilter is unable to perform the cleaning within thirty (30) days, then the Settlement Class Member can then schedule his or her own contractor to perform the cleaning and LeafFilter will reimburse the Settlement Class Member for the full amount of the cleaning, up to a maximum of $100 per cleaning, no later than 14 days after receipt by LeafFilter of the invoice from the Settlement Class Member.

B.     **Release**

In exchange for the relief described above, and upon entry by the Court of a Final Order and Judgment approving the Settlement, Settlement Class Members will release Defendant and its affiliated entities (the "Releasees" as defined in the Settlement) of, among other things, all claims related to any conduct, act, omissions, facts, matters, transactions or oral or written statements or occurrences that relate to or arise out of the LeafFilter Gutter System and that share a factual predicate with the allegations or claims pled in the Complaint. The Settlement does not include any personal injury claims. Thus, it addresses debris accumulation issues, which are common problems for members of the Settlement Class. Most importantly, this Settlement does not affect over 90% of LeafFilter customers during the Class Period who have not previously raised a Debris Accumulation issue with LeafFilter and are not included in the Settlement Class. Thus, it is narrowly tailored to the issue before this Court.

C.     **Class Representative Service Award**

Under the Settlement, LeafFilter has agreed to pay reasonable Service Awards to the Named Plaintiffs, as approved by the Court. Class Counsel have agreed not to seek service awards in excess of $3,500.00. Married Named Plaintiffs will seek no more than $3,500 total. Any Service Award that may be approved by the Court will be paid separately by Defendant from the relief being offered to the members of the Settlement Class, and would be in addition to any relief the Named Plaintiffs may receive as a member of the Settlement Class. The Service Award is intended to compensate the Class Representatives for their time and effort assisting Class Counsel with the prosecution of this case and negotiation of the Settlement.

D.     **Attorneys' Fees and Expenses**

Under the Settlement, LeafFilter has agreed to pay reasonable attorneys' fees and expense

reimbursement to Class Counsel as approved by the Court. Class Counsel has agreed not to seek an award of attorneys' fees and reimbursement of costs and expenses in excess of $1,775,000.00. Any Attorneys' Fees and Expenses awarded by the Court will be paid separately from the relief being offered to the Settlement Class Members.

## IV.    ARGUMENT

### A.    The proposed Settlement warrants preliminary approval.

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Class action settlements are governed by Fed. R. Civ. P. 23(e). Under Rule 23(e), the proponents of the Settlement must present the Court with sufficient information to determine that it will likely be able to: (1) certify the class for settlement purposes; and (2) approve the proposed settlement as fair, adequate and reasonable. Fed. R. Civ. P. 23(e). Named Plaintiffs will address each in turn.

### B.    The Proposed Class Satisfies the Certification Requirements of Rule 23

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). At this stage of the proceedings, Named Plaintiffs must show that the Court will likely be able to certify the proposed Settlement Class for purposes of judgment. *See* Fed. R. Civ. P. 23(e)(1).

The four requirements of Federal Rule of Civil Procedure 23(a) are numerosity, commonality, typicality, and adequacy. Furthermore, Named Plaintiffs will seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no magic number needed to satisfy numerosity; in the Sixth Circuit, numerosity has been satisfied with a class of 35. *See In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) ("substantial" numbers satisfy, and thousands are "substantial"). Here, the total number of Class Members at issue is approximately 60,000. *See* Mango Decl., ¶7. Numerosity is therefore readily satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

In this case, there are numerous common questions of law and fact, such as whether the LeafFilter Gutter Systems suffered from a defect that caused them to accumulate debris on top of the gutter system; whether LeafFilter had a duty to disclose that alleged defect to consumers; and whether the Class Members have actionable claims. Commonality is, therefore, satisfied. *See In*

9

*re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 855 (6th Cir. 2013) (commonality satisfied because "the evidence confirms that the issues regarding alleged design flaws are common to the class"); *see also Daffin v. Ford Motor Co.*, 2004 WL 5705647, at *2 (S.D. Ohio July 15, 2004), *aff'd,* 458 F.3d 549 (6th Cir. 2008).

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented.

Here, the Named Plaintiffs' claims all arise out of the same alleged conduct by LeafFilter related to the design, manufacture, and sale of the allegedly defective Gutter Systems, and the same legal theories apply to all. Typicality is satisfied.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria:  1) the "representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083).  Here, the Named Plaintiffs are adequate because during

10

the Class Period they purchased a LeafFilter Gutter System that would be covered by the Settlement and were all allegedly damaged by a defect in the Gutter System. They have also actively participated in the litigation of this case.

In addition, Named Plaintiffs' counsel are qualified. The Agreement designates Varnell & Warwick, P.A. and Goldenberg Schneider, L.P.A. as Class Counsel. These firms have invested considerable time and resources into the prosecution of this action and possess a wealth of experience litigating complex class action lawsuits. (*See* Warwick Decl. ¶¶16, 26; Goldenberg Decl. ¶¶ 4, 10. Based on the results achieved here, the Court should appoint these firms as Class Counsel, and determine that Rule 23(a)'s adequacy requirement is satisfied.

### 5. Rule 23(b)(3) Requirements

Named Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp.*, 722 F.3d at 860. With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17,

2017) (citing Fed. R. Civ. P. 23(b)(3)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Settlement Class Members. For example, were this case to proceed, the primary issue would be whether LeafFilter Gutter Systems were defective, and whether LeafFilter is liable for distributing defective Gutter Systems. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See Daffin,* 2004 WL 5705647, at *2 (predominance satisfied where significant issues included: 1) whether throttles were defective; 2) whether that defect reduced the value of the car; and 3) whether Ford breached its warranty); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) ("the proof required [must focus] on Defendant's conduct, not on the conduct of the individual class members"). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. The proposed Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against LeafFilter. *See Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework

of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)). Here, individual trials are not feasible; the proposed class action remedy is superior.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

## C.    The Proposed Settlement Is Fair, Adequate, and Reasonable

As discussed above, the second issue for the Court to determine under Rule 23(e) is whether the Court is "likely" to approve the settlement as fair, adequate, and reasonable.  There are four factors listed in Rule 23(e)(3) which are to be considered when examining the fairness of a proposed settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other.  The proposed Settlement satisfies each component.

### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class

Named Plaintiffs James Zilinsky, Geraldine Zilinsky, Cory Simpson, Meagan McGinley, Sandra GarrettDorsey, Brian Dering, Theresa Dering, Alan Armstrong, and Sandy Armstrong have all been intimately involved in the prosecution of this case since its outset.  All have cooperated with counsel, assisted in the preparation of the Complaint, provided documentation of their purchased Gutter Systems, and responded to Defendant's requests for document production and interrogatories. Warwick Decl. ¶21, 27; Goldenberg Decl. ¶11.  There is absolutely no evidence that the Named Plaintiffs are inadequate to represent the Settlement Class.

Likewise, Named Plaintiffs' Counsel has litigated this matter vigorously from the outset. For the reasons previously discussed with respect to adequacy of representation, the law firms of Varnell & Warwick, P.A. and Goldenberg Schneider, L.P.A. should be designated as Class Counsel.

## 2. The proposed Settlement was negotiated at arms-length.

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland,* 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").[4] Notably, "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. The Parties' respective counsel are experienced in the litigation, certification, trial, and settlement of class actions cases. There is no evidence of any collusion during the settlement process. Settlement negotiations in this case took place over the course of formal and multiple informal mediation sessions and ultimately

---

[4] *See also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 90 (4th Ed. 2002).

reached an initial agreement during a session mediated by Hunter Hughes, Esq., an experienced mediator. After the initial agreement was reached, counsel for both Parties spent significant time exchanging, reviewing, and analyzing additional information for the final settlement. Both Parties' counsel supports the Settlement as fair and reasonable, and all certify that it was reached at arm's-length.[5]

### 3. The relief provided to the Settlement Class is adequate.

To grant preliminary approval, the Court must determine that it is "likely" to approval the settlement. In other words, this Court should determine whether the proposed Settlement falls within the range of possible final approval. Manual for Complex Litigation (Fourth) 21.632 at 320-21. The range of approval "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

Rule 23(e)(2)(c) provides four considerations that must be taken into account when determining whether the relief being provided under the Settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Each factor supports approval.

### a. The costs, risks, and delay of trial and appeal

---

[5] *See also Amos v. PPG Indus.*, 2015 WL 4881459, at *1 (noting that the Southern District of Ohio "recognizes that the settlement of class action is generally favored and encouraged" (internal citations omitted)).

Although Named Plaintiffs believe that the claims asserted in the Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant posed significant risks that made any recovery for the Settlement Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." (internal citations and quotations omitted)).[6]

Here, if the litigation were to continue, Named Plaintiffs would face a number of high-stakes risks before trial that could have limited, or even eliminated, their claims, including a possible negative ruling on the pending motions to dismiss or strike class allegations, or a summary judgment ruling in favor of Defendant. Despite these real and significant risks, the Settlement Class Members will receive significant benefits under the Settlement.

When considering the Settlement, Named Plaintiffs weighed the certainty of an immediate recovery for the Settlement Class against the significant legal challenges Named Plaintiffs faced. Under these circumstances, the proposed Settlement is fair, reasonable, and adequate.

### b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

Because LeafFilter has addresses for all of the homes where its LeafFilter Gutter System was installed, the notice plan calls for direct mail notice (supplemented by additional email notice when possible) to Settlement Class Members at those addresses.  As part of the Notice, Settlement

---

[6] *See also Brotherton*, 141 F. Supp. 2d at 905 (noting that adding any further delay "would not substantially benefit class members" and would support a finding that the settlement was fair, reasonable, and adequate); *Miracle v. Bullitt Cnty., Ky.*, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

Class Members are provided a simple Claim Form that allows them to select one of four benefits available through the Settlement, depending upon their individual circumstances and preferences. The Claim Form is attached to the Settlement Agreement as Exhibit C. The claim process is designed to be simple and straight forward.  A class member may either return the Claim Form provided with the Notice or file a claim electronically through the Settlement Website. The Settlement Agreement provides procedures for a Settlement Class Member to dispute any claim denial, and automatically awards a substitute benefit if the denial is due to failure to provide sufficient proof of out-of-pocket expenses.  If the Settlement Class Member has any questions, they can call a toll-free number with live operators who can answer their questions.

### c. The terms of any proposed award of attorney's fees, including timing of payment

Named Plaintiffs' Counsel agreed in the Settlement Agreement to seek an award of no more than $1,775,000 for attorney fees and expenses, and LeafFilter agreed to pay reasonable attorneys' fees and expenses, as approved by the Court.  The Settlement Agreement requires Class Counsel to apply to the Court for an attorney fee and cost award at least fourteen days prior to the deadline for Settlement Class Members to object.

Importantly, whatever attorneys' fees, expense reimbursement, and service payments are awarded by this Court, such awards will not reduce the benefits available to the Settlement Class Members.  And any fees and expenses awarded by the Court will be paid fourteen days after the Effective Date, as defined by the Settlement Agreement.

### d. Any agreement required to be identified under Rule 23(e)(3)

Rule 23(e)(3) requires parties seeking approval to "file a statement identifying any agreement made in connection with the proposal." This section requires disclosure of any side agreements that may not be set clearly forth in the settlement agreement.  The Parties have included

17

all details of their settlement within the Settlement Agreement and supporting documents.  There are no additional agreements.

### 4. The proposed Settlement treats class members equitably relative to one another.

The final factor to be considered under amended Rule 23(e)(2) asks whether the proposed settlement treats class members equitably relative to one another.  Here, the Settlement is designed to allow each Settlement Class Member to select the benefit that is most desirable to them, based up on their individual circumstances.  Each benefit is valued at no less than $200 and no more than $285, so that no Settlement Class Member will recover significantly more than another.

Moreover, the proposed Settlement does not provide preferential treatment to the Named Plaintiffs — instead, their recovery is limited to that obtainable by other Settlement Class Members who file a claim form.  Any Service Award (if awarded by the Court) is separate from class relief and is designed to compensate the Named Plaintiffs for their time, effort, and inconvenience in connection with acting as the class representative in this case.

### D. The proposed form and manner of notice to the Class is reasonable and should be approved.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In order to satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *43.

The Notice Plan set forth in the Agreement provides the best notice practicable under the circumstances – direct mail notice to all persons on the Class list. The Parties negotiated the form of the Notice which will be provided to all persons who fall within the definition of the Class. The Notice is attached to the Settlement Agreement as Exhibit B.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Class Counsel will file their Motion for Attorneys' Fees and Expenses no later than two weeks before the deadline for Class Members to object, and the Motion will be posted to the Settlement Website after it is filed to allow Class Members the opportunity to review it.

The proposed Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the Named Plaintiffs' request for an incentive award and the payment of attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by direct mail and email to all Settlement Class Members, represents the best notice practicable under the

circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### D. The Court should approve KCC as Settlement Administrator

Attached as Ex. 6 is the Declaration of Christie Reed, Class Actions Case Specialist with KCC Class Action Services, LLC ("KCC"), setting forth KCC's experience and qualifications. Named Plaintiffs request that the Court approve KCC as Settlement Administrator in this action.

### E. The Court should provide a schedule leading up to a Fairness Hearing.

Named Plaintiffs request that the Court set a schedule, leading up to a Fairness Hearing, that includes the following dates:

| Date | Event |
|---|---|
| No later than 60 days after entry of preliminary approval order | Class Notice Disseminated ("Notice Date") |
| No later than 31 days after Notice Date | Motion for Approval of Attorneys' Fees and Expenses and Service Awards filed |
| 45 days after Notice Date | Objection and Opt-Out Deadline |
| 120 days after Notice Date | Claim Submission Deadline |
| No later than 28 days before Fairness Hearing | Motion for Final Approval filed |
| No later than 21 days before Fairness Hearing | LeafFilter's Response (if any) to Plaintiffs' Motions |
| No later than 14 days before Fairness Hearing | Reply Memoranda in Support of Final Approval and Fee Application filed |
| No earlier than 90 days after Notice Date | Settlement Fairness Hearing |

## IV.    CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Named Plaintiffs respectfully request that the Court grant preliminary approval and enter the proposed Order attached to the Settlement Agreement as Exhibit A.

Respectfully submitted,

*/s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
Email: jgoldenberg@gs-legal.com
          tnaylor@gs-legal.com

Janet R. Varnell*
Matthew Peterson*
Brian Warwick*
**VARNELL & WARWICK**
1101 E. Cumberland Avenue
Suite 201H, #105
Tampa, FL  33602
Telephone: (352)753-8600
Email: jvarnell@varnellandwarwick.com
          mpeterson@varnellandwarwick.com
          bwarwick@varnellandwarwick.com

* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg