IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES ZILINSKY, GERALDINE ZILINSKY, CORY SIMPSON, MEAGAN McGINLEY, SANDRA GARRETTDORSEY, BRIAN DERING, THERESA DERING, ALAN ARMSTRONG, and SANDY ARMSTRONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEAFFILTER NORTH, LLC,<br><br>Defendant. | CASE NO. 2:20-cv-6229-MHW-KAJ<br><br>JUDGE MICHAEL H. WATSON |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.     INTRODUCTION**

On August 8, 2022, this Court preliminarily certified the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure for settlement purposes, preliminarily approved the settlement terms as fair, adequate, and reasonable, directed that notice be given to the Settlement Class, and scheduled a Final Approval Hearing for March 14, 2023.[1]  ECF No. 58 (the "Preliminary Approval Order").  The parties complied with the order and now seek final approval of the Settlement.  A proposed Order Granting Final Approval is attached hereto as Exhibit 1.

---

[1] Unless otherwise indicated, defined terms herein have the same meaning as set forth in the Amended Settlement Agreement and Release executed on June 24, 2022 (the "Settlement Agreement" or "S.A."). ECF No. 54-2.

The Settlement remains fair, adequate, and reasonable and represents a substantial recovery for the Settlement Class. Defendant LeafFilter North, LLC ("Defendant" or "LeafFilter") will provide Settlement Class Members with fully transferrable vouchers for up to three future debris cleanings (total value $285) at no cost, or reimbursement for up to $200 in out-of-pocket expenses the Settlement Class Member previously incurred. The Notice plan has been effectuated as per the Court's Preliminary Approval Order, providing direct mail and/or email notice with an estimated reach of 99.39%. *See* Declaration of Kenneth Jue in Support of Plaintiffs' Motion for Final Approval, ¶6 ("Jue Decl."), attached as Exhibit 2.

The reaction of the Settlement Class has been overwhelmingly positive. The deadline to object or opt out of the settlement was November 21, 2022, and the claims deadline was February 4, 2023. As of the filing of this motion, in response to 57,704 mailed notices, 39,855 emailed notices, the settlement website, and a toll-free number, 10,649 Settlement Class Members submitted claim forms to date, with additional timely claim forms expected to be received over the next few weeks. *Id.*, ¶¶3, 9. This amounts to approximately 18.5% percent of the Settlement Class, a robust claims rate "rarely" seen in consumer class actions. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (rare to have claims rate above 7%). In contrast, only 46 class members have objected to the settlement (0.08%)[2] and 231 individuals timely opted out (0.4%). *See* Jue Decl., ¶¶10, 11; *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008) (finding an objection rate nine times higher

---

[2] Notably, the 46 objections include multiple communications from class members that were untimely and/or fail to satisfy the objection requirements set forth in the Preliminary Approval Order, but also fail to actually *object* to any particular aspect of the Settlement. For example, class members Lillie Setters and Philip Navin, Jr. filed claim forms with handwritten comments explaining why they believe the LeafFilter system does not work properly on their homes, but do not identify anything wrong with the proposed Settlement. *See* ECF Nos. 95, 96. However, the 46 objections do not include the submission of class member Mark Peskowitz, who merely filed his claim form with the Court (ECF No. 67).

than here, .7 percent vs. .08 percent, was low enough to "support a finding the settlement was fair").

As explained in the previously filed motion for awards of attorneys' fees, litigation expenses, and service awards to the Class Representatives (ECF No. 70), the requested amounts are appropriate under the Settlement Agreement and reasonable in comparison to awards in similar cases. Specifically, Plaintiffs and Class Counsel seek $1,749,416.31 for attorney fees, $25,583.69 for reasonable and necessary expenses, and a $3,500 service award for each Plaintiff household. Notably, the Settlement Agreement does not contain a "clear sailing" provision and LeafFilter was free to oppose Plaintiffs' fee petition. Further, no class members objected to the requested fees, expenses, or service awards despite the amounts being disclosed in the Notice and the fee petition being posted on the Settlement website weeks before the objection deadline.

The Class Representatives now move for final approval of the Settlement. As set forth herein, the Class Representatives respectfully request the Court enter an order that: (1) finally approves the Settlement Agreement and Release as fair, reasonable, and adequate under Rule 23(e); (2) finally certifies the Settlement Class under Fed. R. Civ. P. 23(b)(3); (3) finally appoints James Zilinsky, Geraldine Zilinsky, Cory Simpson, Meagan McGinley, Sandra GarrettDorsey, Brian Dering, Theresa Dering, Alan Armstrong, and Sandy Armstrong as Class Representatives; (4) finally appoints Brian Warwick and Janet Varnell of Varnell & Warwick, and Jeffrey S. Goldenberg and Todd B. Naylor of Goldenberg Schneider, LPA as Class Counsel; (5) finds the Notice plan as implemented satisfies Rule 23 and due process; (6) finally appoints KCC Class Action Services as the Settlement Administrator; (7) awards Class Counsel $1,749,416.31 for attorney fees and $25,583.69 for reasonable and necessary expenses; (8) awards each Plaintiff household a $3,500 service award; and (9) grants further relief as the Court deems just and proper.

## II. BACKGROUND

Inasmuch as Plaintiffs detailed the background of the case in their Motion for Preliminary Approval, Plaintiffs set forth a summary of the case only to the extent relevant to the instant motion.

### A. The Litigation

On January 3, 2020, Plaintiffs James and Geraldine Zilinsky filed a Class Action Complaint [ECF No. 1] against Defendant alleging that LeafFilter Gutter Systems contain a defect that causes debris to accumulate on top of the LeafFilter system and rainwater to flow over the top of the LeafFilter system. The Class Action Complaint asserted claims for (1) violation of the Ohio Consumer Sales Practices Act, (2) breach of the implied warranty in tort, (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, (4) fraud and fraudulent concealment, and (5) unjust enrichment on behalf of a nationwide class (and Illinois subclass) of purchasers of LeafFilter Gutter Systems.

On April 1, 2021, Plaintiffs filed the First Amended Class Action Complaint [ECF No. 19], which added seven additional named plaintiffs (Cory Simpson, Meagan McGinley, Sandra GarrettDorsey, Brian Dering, Theresa Dering, Alan Armstrong, and Sandy Armstrong), four additional state subclasses (Maryland, New Jersey, Pennsylvania, and Washington), and four additional claims (violation of the Maryland Consumer Protection Act, violation of the New Jersey Consumer Fraud Act, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and violation of the Washington Consumer Protection Act).

Defendant moved to dismiss the First Amended Class Action Complaint and strike its class allegations [ECF No. 30] on April 29, 2021. Plaintiffs filed their opposition memorandum [ECF No. 33] on May 27, 2021. And Defendant filed its reply brief [ECF No. 36] on June 17, 2021.

While Defendant's motion was pending, the Parties engaged in substantial formal and informal discovery, which included the production of more than 45,000 pages of documents by Defendant. *See* Declaration of Brian Warwick in Support of Preliminary Approval ("Warwick Decl."), ECF 54-7, ¶4. On January 25, 2022, the parties jointly moved the Court to stay [ECF No. 46] the proceedings to allow the parties to attempt to resolve their dispute through mediation. The Court granted the motion [ECF No. 47].

### B. Negotiation of the Proposed Settlement

The Parties engaged in mediation with the assistance of a respected and experienced neutral, Hunter Hughes, Esq.[3] The mediation process was extended, at times contentious, and always adversarial. Warwick Decl., ¶5-6, 21. The Parties advised the Court in multiple Joint Status Reports (ECF Nos. 48, 50, and 52) that they were continuing to work on the details of the proposed settlement, and in fact, as late as June 3, 2022, reported that there was a possibility that they would not be able to reach final agreement. ECF No. 52. Ultimately, with the assistance of Mr. Hughes, the mediation process was successful and the parties reached the Settlement Agreement attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval [ECF No. 54-2].

### C. The Settlement Agreement

#### 1. Settlement Class Definition

The proposed Settlement Class is defined to include Named Plaintiffs and a limited and specific subset of LeafFilter customers who share two defining features: (1) they all had debris building up on top of their LeafFilter Gutter System; and (2) they all had LeafFilter open a service ticket relating to Debris Accumulation. The definition is:

> All LeafFilter customers in the United States who appear in LeafFilter's customer care database with a Debris-Related Final Issue Code for their service request during the time period from January 1, 2016 through June 24, 2022.

---

[3] Mr. Hughes' extensive resume was previously filed as ECF No. 54-6.

## 2. Relief Provided by the Settlement

The relief provided by this Settlement is directed at debris accumulation. *See* Doc. 19 at, *e.g.*, ¶1 (alleging a latent defect exists in the LeafFilter Gutter System that causes "debris to accumulate on top of the LeafFilter system that must be cleaned off by the homeowner"). If a LeafFilter customer complains about debris and requests a service call, a LeafFilter representative comes to the customer's home and removes any debris on top of the LeafFilter Gutter System, a service for which it charges $95. Declaration of Rocco Mango, ECF No. 54-10, ¶8.

Under the Settlement, LeafFilter has agreed to provide each Settlement Class Member fully transferrable vouchers for up to three future debris cleanings (total value $285) at no cost, or reimbursement for up to $200 in out-of-pocket expenses the Settlement Class Member previously incurred. Settlement Class Members can select one (1) of the following forms of relief:

Benefit 1: Reimbursement of up to $200 for two prior Debris Removal Cleanings. Claims for reimbursement shall be supported by Proof of Expense demonstrating that the Settlement Class Member paid out-of-pocket money to specifically remove Debris Accumulation. The maximum amount of each individual reimbursement is not to exceed $100, and the total amount of reimbursement shall not exceed $200. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation.

Benefit 2: Reimbursement of up to $100 for one prior Debris Removal Cleaning, and Vouchers for two future Debris Removal Cleanings. Claims for reimbursement shall be supported by Proof of Expense demonstrating that the Settlement Class Member paid out-of-pocket money to specifically remove Debris Accumulation. The maximum amount of such reimbursement is not to exceed $100. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation. Settlement Class Members

6

will also receive two, fully transferrable Vouchers for future Debris Removal Cleanings.[4]

<u>Benefit 3: Vouchers for three future Debris Removal Cleanings</u>. Settlement Class Members will receive three, fully transferrable Vouchers for future Debris Removal Cleanings. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation.

<u>Benefit 4: Reimbursement of up to $200 for costs related to the removal of the LeafFilter Gutter System because of Debris Accumulation problems.</u> Claims for reimbursement shall be supported by Proof of Expense demonstrating that the Settlement Class Member paid out-of-pocket money to remove the LeafFilter Gutter System. As part of completing the Claim Form, Settlement Class Members must certify that their LeafFilter Gutter System experienced Debris Accumulation and that the system was removed for that reason.

3. **Release**

In exchange for the relief described above, and upon entry by the Court of a Final Order and Judgment approving the Settlement, Settlement Class Members will release Defendant and its affiliated entities (the "Releasees" as defined in the Settlement) of, among other things, all claims related to any conduct, act, omissions, facts, matters, transactions or oral or written statements or occurrences that relate to or arise out of the LeafFilter Gutter System and that share a factual predicate with the allegations or claims pled in the Complaint. The Settlement does not include any personal injury claims. Thus, it addresses debris accumulation issues, which are common problems for members of the Settlement Class. Most importantly, this Settlement does

---

[4] The Voucher cleanings are to be performed by LeafFilter or its agents and shall be performed within thirty (30) days of request by the Settlement Class Member. If LeafFilter is unable to perform the cleaning within thirty (30) days, then the Settlement Class Member can then schedule his or her own contractor to perform the cleaning and LeafFilter will reimburse the Settlement Class Member for the full amount of the cleaning, up to a maximum of $100 per cleaning, no later than 14 days after receipt by LeafFilter of the invoice from the Settlement Class Member.

not affect over 90% of LeafFilter customers during the Class Period who have not previously raised a Debris Accumulation issue with LeafFilter and are not included in the Settlement Class. Thus, it is narrowly tailored to the issue before this Court.

### D. Preliminary Approval and Class Notice

On August 8, 2022, the Court granted preliminary approval of the Proposed Settlement, finding that "the terms of the Settlement Agreement appear to be fair, reasonable, and adequate such that it will likely be able to finally approve the Settlement Agreement..." Preliminary Approval Order [ECF No. 58], PAGEID 642-3. Pursuant to the Court's Order, the Settlement Administrator disseminated notice in accordance with the Notice Plan, which the Court has already determined was the "best practicable notice," satisfying all requirements of due process. *Id.*, PAGEID 647. The Jue Decl., Ex. 2 hereto, discusses in detail the implementation of this Notice Plan. The Notice was issued on October 7, 2022, so that any objections or requests for exclusion were due to be postmarked by November 21, 2022. *See* Jue Decl., ¶¶10-11.

### III. ARGUMENT

#### A. Standard for Granting Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." Courts consider the following factors when determining whether a proposed settlement meets that standard:

(1) the risk of fraud or collusion;

(2) the complexity, expense, and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.[5]

"These factors are considered in light of 'federal law favor[ing the] settlement of complex class actions.'" *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018 WL 4539287, at *2 (N.D. Ohio Sept. 21, 2018) (quoting *Preston v. Craig Transp. Co.*, No. 3:14 CV 1410, 2015 WL 12766499, at *2 (N.D. Ohio Oct. 29, 2015)).  Indeed, "[f]ollowing preliminary approval, the class action is presumed to be reasonable…" *Id.*

Therefore, "a district court's role in evaluating a private consensual agreement 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Todd S. Elwert, Inc., DC*, 2018 WL 4539287, at *2  (quoting *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986) (per curiam)).  It is not appropriate to "withhold approval simply because the benefits accrued from the [agreement] are not what a successful plaintiff would have received in a fully litigated case." *Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 550 (S.D. Ohio 2000).  "In general, a reviewing court's task 'is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question is rather whether the parties are using settlement to resolve a legitimate legal and factual disagreement.'" *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, *12 (N.D. Ohio Sept. 1, 2011) (quoting *UAW*, 497 F.3d at 632).

---

[5] *Karpik v. Huntington Banschares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 244 (6th Cir. 2011)). *See also UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).

Applying these factors here leads to the conclusion that this Settlement is fair, adequate, and reasonable.

### 1. The Risk of Fraud or Collusion

"In assessing settlement agreements, '[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Todd S. Elwert, Inc., DC*, 2018 WL 4539287, at *2. As in *Elwert*, there is no evidence of collusion here because the "interests of the class members and defendant[] are fundamentally adverse" and the settlement agreement was the result of an arms-length negotiation with an experienced mediator. *Id*. Since there is "no evidence – or even a suggestion – that the Settlement was a product of fraud or collusion, … this factor favors approval of the Settlement." *Karpik*, 2021 WL 757123, at *4.

### 2. The Complexity, Expense, and Likely Duration of Litigation

"'Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.'" *Kapik*, 2021 WL 757123, at *4 (quoting *Ganci v. MBF Inspection Servcs., Inc*., No. 2:15-cv-2959, 2019 WL 6485159, at *3 (S.D. Ohio Dec. 3, 2019)). "[A]voiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *In re Big Lots, Inc. S'holder Litig.*, No. 2:12-CV-445, 2018 WL 11356561, at *3 (S.D. Ohio Aug. 28, 2018) (quoting *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-249, 2009 U.S. Dist. LEXIS 126962, at *10 (S.D. Ohio Aug. 18, 2009)).

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002). Similarly, the complexity,

expense, and likely duration of litigation here favor final approval of the Settlement. Continued litigation would certainly be an involved and expensive process.

Moreover, the resulting appeals could take many years and involve substantial expense. The uncertainty of continued litigation stands in stark contrast to the immediate and significant relief offered by this Settlement. Therefore, the Settlement provides Class Members with real benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that … a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

### 3. The Amount of Discovery Engaged in by the Parties

"To confirm that the Plaintiffs 'have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement,' the Court must consider the amount of discovery engaged in by the parties." *Kapik*, 2021 WL 757123, at *5 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)). In this case, the Parties engaged in substantial formal and informal discovery, including the production of more than 45,000 pages of documents by Defendant. Warwick Decl., ECF 54-7, ¶4. Significant factual information has been collected through the discovery process allowing both sides to evaluate their respective strengths and weaknesses. Therefore, sufficient investigation has been done to determine that the terms of this Settlement are fair and reasonable under the circumstances. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("In light of the discovery that took place prior to settlement taking place, the Court deems it appropriate to 'defer to the judgment of experienced trial counsel' with regard to the evaluation of the strength of the

11

case and the desirability of settlement at this stage of the proceeding.") (internal citation omitted). As a result, this factor counsels in favor of Settlement approval.

### 4. Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co.*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

LeafFilter has vehemently denied Plaintiffs' claims and has consistently maintained that their allegations lack merit. Indeed, Defendant's Motion to Dismiss remains pending. And critically here, LeafFilter's warranty language purports to limit its liability to circumstances where the interior of the gutters are clogged, such that there is arguably no warranty coverage for Debris Accumulation on top of the gutters. In other words, "the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement." *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *11 (N.D. Ohio Sept. 23, 2016) .

Beyond the merits, LeafFilter has opposed class treatment of Plaintiffs' claims and, if this Agreement is not approved, will challenge any attempt by Plaintiffs to certify a contested class, both here at the trial court level and on appeal. Thus, given the substantial risks and delay posed by continued litigation, the value obtained by settling this litigation *now* is difficult to overstate. The delay in the process alone, regardless of result, would be of great detriment to the class. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *4 (S.D. Ohio Jan. 26, 2011) ("Given the time value of money, a future recovery, even one greater than the proposed Settlement Amount, may be less valuable to the Settlement Class than receiving the

benefits of the Settlement Agreement now."). Therefore, the inherent risks associated with this case favor approval of this Settlement.

### 5. Experienced Class Counsel Support the Settlement

A "court should defer to the judgment of experienced counsel who has competently evaluated the strength of [their] proofs." *Karpik*, 2021 WL 757123, at *6 (quoting *Williams*, 720 F.2d at 922). "Class Counsel have concluded that the Settlement is not only fair and reasonable, but that it confers substantial benefits to the Class," and "their recommendation that the Court should approve the Settlement is entitled to some deference." *Id. See also* Declaration of Jeffrey S. Goldenberg in Support of Plaintiffs' Motion for Preliminary Approval ("Goldenberg Decl."), ECF No. 54-8, ¶6 ("Settlement Agreement is fair, adequate, reasonable, and is in the best interests of, and will provide significant benefits to, the Class Members in light of all known facts and circumstances"); Warwick Decl., ECF No. 54-7, ¶22 (similar). Because the Settlement was reached after "significant discovery and protracted-arms' length negotiations" between counsel with extensive experience in class actions (*see* Ex. 1 to Goldenberg Decl., ECF No. 54-9; Warwick Decl., ECF No. 54-7), "this factor favors approval of the Settlement." *Rudi v. Wexner*, No. 2:20-CV-3068, 2022 WL 1682297, at *4 (S.D. Ohio May 16, 2022). Moreover, as in *Karpik*, "the Class Representatives previously submitted declarations in support of the Settlement" (*see* ECF No. 70-7), and "[t]heir support also favors approval." *Karpik*, 2021 WL 757123, at *6.

### 6. The Reaction of Absent Class Members

One of the factors typically considered in determining the reasonableness of a settlement is the reaction of the class. *See Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). Here, 10,649 class members submitted a claim for a claim percentage of 18.5% percent. This is an excellent result, as numerous Circuit Courts have observed that "consumer claim filing

13

rates rarely exceed seven percent, even with the most extensive notice campaigns." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011). *See also Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (quoting *Sullivan*).

In addition to the 10,649 claims, 46 class members submitted communications regarding the Settlement that Class Counsel has treated as objections regardless of whether they were timely or compliant with the requirements set forth in the Preliminary Approval Order. "A certain number of ... objections are to be expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003). "Although the Court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem*, 218 F.R.D. at 527 (citing *In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 478–79 (S.D.N.Y. 1998)).

In *Olden*, 79 out of "nearly 11,000 absent class members" submitted objections, which equaled approximately 0.7% of the class. 294 F. App'x at 217. The court observed that this low objection percentage "permits the inference that most of the class members had no qualms" with the settlement which "tends to support a finding that the settlement is fair." *Id.* Here, 46 class members submitted objections out of over 57,000 absent class members (.08%), an objection percentage 9 times fewer than in *Olden* which also supports a finding that the Settlement is fair.

None of the objections here provide a reasoned basis to disturb the settlement and prevent over 10,600 class members from receiving its benefits. Indeed, several objectors spoke in favor of the lawsuit and settlement but merely wanted more relief than was offered. *See, e.g.*, ECF No. 94-4, PAGEID 1389 ("I was glad to see this settlement and have the chance to at least get three

vouchers but I feel it's just not enough."); *id.*, PAGEID 1416 ("Though I applaud the plaintiff's attempt to resolve the issues with the leaf filter organization," a refund should be offered); ECF No. 63, PAGEID 696 ("this class action suit [was] necessary" but "three vouchers is too little too late"); ECF No. 94-4, PAGEID 1537 ("I do agree with everything this settlement is bringing forth," however objector wants a refund and out of pocket costs reimbursed). Critically, under the contracts executed by the Class, LeafFilter has no duty to provide any debris cleaning at all. Moreover, LeafFilter's warranty language specifically disclaims any representations other than that the interior of the gutter will never clog. But for this Settlement, the Class has no right to expect or receive any debris removal by LeafFilter. This is among the reasons the benefits being provided here are substantial and real.

As additional evidence of the value of the benefits being provided, the objections largely agree that debris cleanings are an appropriate remedy (short of a full refund) but merely assert that more vouchers/ cleanings should be provided. *See, e.g.*, ECF No. 71, PAGEID 885 (relief should be "unlimited free vouchers"); ECF No. 94-5, PAGEID 1512 ("I understand you cannot award another 'lifetime' of cleanings in this settlement, however, I think it would be reasonable to offer fifty free cleanings…"). However, no objector explains how the contract terms require LeafFilter to provide any cleanings at all. And, objections that request a complete refund of the objector's purchase price go beyond what could be obtained in a settlement of a disputed claim. *See, e.g.*, ECF No. 94-4, PAGEID 1395 ("I am hereby demanding … a full refund…"); *id.*, PAGEID 1427 ("Members of this class action should be reimbursed for their entire cost of purchase of LeafFilter"); *id.*, PAGEID 1433 ("settlement that we would agree with is refund of money"); *id.*, PAGEID 1537 ("all members of the settlement should be offered a full refund" and "[i]n addition … reimbursement should be made to any member that had to pay out of pocket").

15

"Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509, at *22 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted,* No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd,* 822 F.3d 269 (6th Cir. 2016) (quotation omitted). After all, "[n]o one is required to participate in this settlement if they are not in favor of its terms. If an individual believes they can successfully recover a higher amount from a jury, they could opt-out of the settlement and take their case to trial." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 817 (E.D. Mich. 2021).

And, in fact, 231 class members did timely opt-out of the Settlement to preserve their rights to seek individual relief against LeafFilter. Jue Decl., ¶10. Notably, the Notice instructed class members to opt-out if they believed they had damage to their homes as a result of the LeafFilter system. Even then, only 0.4% of class members opted out of the settlement. *See generally Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 680 (7th Cir. 1987) ("Only 1.5 percent of the class members had opted out, a surprisingly small fraction if the settlement is as bad as [objector] argues.")

In sum, the objectors have failed to establish a reasonable basis to deny final approval of this Settlement, and their objections should be overruled.

### 7. The Public Interest

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2002)); *accord UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"). The Sixth Circuit has noted that "settlement agreements should ... be upheld

16

whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 555 (6th Cir. 1982), rev'd on other ground*s*, 467 U.S. 561, 104 S. Ct. 2576, 81 L. Ed. 2d 483 (1984). Particularly in light of the immediate benefits that the Settlement provides to the Class Members here, this "overriding public interest" would be well-served by approval of this Settlement.

### B. Class Notice Was Reasonable

The Court has already evaluated the notice program and determined that it was reasonable, satisfied the requirements of Rule 23 and Due Process, and constituted the "best practicable notice" available, providing individual notice to all class members who could be identified through reasonable effort—here, through LeafFilters's own records. *See* ECF No. 58, at PAGEID 647-8; Fed. R. Civ. P. 23(c)(2)(B). The Settlement Administrator sent the Court-approved Settlement Notices to each of the class members via U.S. Mail and, where available, email. *See* Jue Decl., ¶7. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). In addition, KCC established a website and toll-free number for members of the Settlement Class. *See* Jue Decl., ¶¶7-8. The content of the Notice also was reasonable, as the Notice included among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for the submission of Claim Forms; (6) instructions as to how to opt out of the Settlement or to object to the Settlement and a date by which Settlement Class Members must opt out or object; (7) the date, time, and location of the Fairness Hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and

the amount of attorneys' fees and litigation expenses that they would seek, as well as the service awards being sought for the Class Representatives. These Notices were previously approved by the Court, *see* ECF No. 58, PAGEID 647, and "'fairly apprise[] the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Graybill v. Petta Enterprises, LLC*, No. 2:17-cv-418, 2018 WL 4573289, at *3 (S.D. Ohio Sept. 25, 2018) (quoting *UAW*, 497 F.3d at 630 (citation omitted)). No member of the Settlement Class has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

### C. Final Certification of the Settlement Class Should is Appropriate

In the Preliminary Approval Order, the Court provisionally certified the Settlement Class and appointed Plaintiffs' counsel, Varnell & Warwick, P.A. and Goldenberg Schneider, LPA as Class Counsel. *See* Preliminary Approval Order, ECF No. 58, PAGEID 645. None of the circumstances that warranted certification at the preliminary approval stage have changed. Thus, for the reasons identified in the Court's Preliminary Approval Order and Plaintiff's Memorandum of Law in Support of the Unopposed Motion for Preliminary Approval of Class Action Settlement, the Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1). *See generally* ECF Nos. 60-1, 62.

### IV.     CONCLUSION

For the reasons explained above, Plaintiffs respectfully submit that this Court should finally approve the Settlement and enter the proposed Order attached hereto as Exhibit 1.

Respectfully submitted,

*/s/ Jeffrey S. Goldenberg*

18

        Jeffrey S. Goldenberg (0063771)
        Todd B. Naylor (0068388)
        **GOLDENBERG SCHNEIDER, LPA**
        4445 Lake Forest Drive, Suite 490
        Cincinnati, OH 45242
        Telephone: (513) 345-8291
        Facsimile: (513) 345-8294
        Email: jgoldenberg@gs-legal.com
             tnaylor@gs-legal.com

        Janet R. Varnell*
        Matthew Peterson*
        Brian Warwick*
        **VARNELL & WARWICK**
        1101 E. Cumberland Avenue
        Suite 201H, #105
        Tampa, FL 33602
        Telephone: (352)753-8600
        Email: jvarnell@varnellandwarwick.com
             mpeterson@varnellandwarwick.com
             bwarwick@varnellandwarwick.com

        * Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        */s/ Jeffrey S. Goldenberg*
        Jeffrey S. Goldenberg