**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **James Zilinsky,** *individually and on behalf of all others similarly situated, et al.,* | |
| **Plaintiffs,** | **Case No. 2:20-cv-6229** |
| **v.** | **Judge Michael H. Watson** |
| **LeafFilter North, LLC,** | **Magistrate Judge Jolson** |
| **Defendant.** | |

## OPINION AND ORDER

James Zilinsky, Geraldine Zilinsky, Cory Simpson, Brian Dering, Theresa Dering, Meagan McGinley, Sandy Armstrong, Sandra GarrettDorsey, and Alan Armstrong (collectively, "Plaintiffs") move for final approval of the Parties' class action Settlement, ECF No. 98, and for an award of attorney's fees and service awards, ECF No. 70. LeafFilter North, LLC ("Defendant") does not oppose either motion. For the following reasons, Plaintiffs' motions are **GRANTED**.

### I. BACKGROUND

**A.** **Procedural History**

Plaintiffs filed a Class Action Complaint ("Action") against Defendant in December 2020, alleging that Defendant materially misrepresented that its gutter protection system would not clog or overflow when, in fact, the system was defective and allowed debris to accumulate on top of the gutters. Compl., ECF

No. 1. Plaintiffs assert consumer protection and common law tort claims under various states' laws. Compl., ECF No. 1. Plaintiffs later filed an Amended Complaint with substantially the same allegations. ECF No. 19.

The Parties fully briefed a motion to dismiss. ECF Nos. 30, 33, & 36. Before the Court ruled on the motion, the Parties moved for a stay pending mediation, which the Court granted. ECF Nos. 46 & 47. Subsequently, the Parties notified the Court that they reached a settlement. ECF No. 50. The Parties moved for preliminary approval of their Settlement Agreement, which the Court granted. ECF Nos. 54, 56, & 58. The Court held a fairness hearing on March 24, 2023, and now turns to Plaintiffs' unopposed motions for final approval of the Settlement and for an award of attorney's fees, costs, and service awards. ECF Nos. 70 & 98.

## B. The Settlement Agreement

Per the Parties' representations at the Fairness Hearing, the Settlement Agreement creates a $5.2 million Settlement Fund for the benefit of the Class. The Settlement Fund will cover settlement payments to Class Members, costs of notice to the Class and administration of the settlement, reimbursement of Class Counsel's reasonable costs and expenses, attorney's fees for Class Counsel, and service awards to named Plaintiffs. *See generally* Settlement Agreement, ECF No. 56-2. Class Members had the opportunity to submit a claim form to receive one of four benefits: (1) vouchers for future gutter cleanings; (2) reimbursement for past gutter cleaning; (3) a combination of vouchers and

reimbursement; and (4) partial reimbursement for removal of the gutter protection system.  *Id.*

The Settlement Class is defined as follows:

> [A]ll LeafFilter customers in the United States who appear in LeafFilter's customer care database with a Debris-Related Final Issue Code for their service request.  The Class Period shall mean the time period from January 1, 2016 through the date that the Settlement Agreement is fully executed.

*Id.* at 11.  The Parties represent that there are nearly 58,000 Class Members.

*Id.*

## C.    Notice

The Court appointed KCC Class Action Services, LLC ("KCC") to be the Settlement Administrator.  *See* Order 6, ECF No. 58; Jue Decl. ¶ 1, ECF No. 98-3.  KCC was responsible for providing Notice to Class Members.  *See generally* Jue Decl., ECF No. 98-3.  KCC reviewed the records provided by Class Counsel, obtained updated mailing addresses and email addresses, and sent the Notice via mail to 57,704 Class Members and via email to 39,855 Class Members.[1]  Jue Decl. ¶¶ 2–3, ECF No. 98-3.  Although over 1,000 notices initially came back as undeliverable, KCC was ultimately able to send notices to all but 354 Class Members.  *Id.* ¶ 6.

---

[1] As the Parties represent that there are nearly 58,000 Class Members, the Court assumes there were several Class Members that received both an email and a mail version of the Notice.

## II.     APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT

To grant final approval of a settlement class, the Rule 23 requirements must be satisfied.  *See* Fed. R. Civ. P. 23.  The Court has already preliminarily approved the Class for settlement purposes, ECF No. 58, and now finds that the standards required for final approval are satisfied.

### A.     Numerosity

To satisfy numerosity, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted).  Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc., v. EEOC*, 446 U.S. 318, 330 (1980).  Here, the Class contains nearly 58,000 members.  Numerosity is satisfied because it would be impractical, if not impossible, to join all of these members into one action.

### B.     Commonality

To establish commonality, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the Class Members have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50, 2011) (internal quotation marks and citations omitted).  The claims "must depend on a common contention . . . of such a nature that is capable of classwide resolution—which means that

determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, the lawsuit raised numerous common questions including whether Defendant made the alleged misrepresentations and whether the gutter protection system had a defect that allowed debris to accumulate on top of it. In addition, the Class Members have the same alleged injury: the gutter protection system did not perform as allegedly promised. Accordingly, the commonality requirement is satisfied.

## C. Typicality

A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Here, the typicality element is satisfied because the Class claims are based on the same legal theories and the same alleged conduct.

## D. Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 625 (1997). To determine the adequacy of representation requirement, a court must consider two elements: "1) the

representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel." *Pelzer v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016) (internal quotation marks and citations omitted).

Here, the Class Representatives and Class Members share common interests. No conflict exists between the Class Representatives and the Class Members they seek to represent. Also, Class Counsel have extensive experience in class action litigation and corporate matters. *See* Warwick Decl. ¶¶ 8–21, ECF No. 56-7; Goldenberg Decl. ¶ 4, ECF No. 56-8. Thus, adequacy is met.

### E.    Rule 23(b) Requirements

Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires a showing that common questions of fact or law predominate over any individual questions and that a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

#### 1.    Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) (citation omitted).

Predominance is satisfied here. There is one set of operative facts which would render Defendant liable to each potential class member, as evident in the definition of the class. Each class member had one of Defendant's gutter protection systems installed and had a "Debris-Related Final Issue Code" request in Defendant's records. Consequently, the alleged injuries to Class Members are of the same nature and each class member will have experienced similar misrepresentations by Defendant. The Court therefore finds common questions predominate over individual issues in this case.

### 2. Superiority

Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this decision, the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*.

Here, class treatment is superior to other available methods. The Class Members have little interest in individually controlling separate actions as the amount of individual damages is likely to be small. "[S]mall awards weigh in

favor of class suits." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) (citing cases). The Court is not aware of any litigation concerning this controversy that has already begun by or against the Class Members. It is desirable to concentrate the litigation in this forum as the Parties and, to a lesser extent, the Court have already expended significant time and resources on this case. Last, the difficulties in managing a class action do not outweigh the benefits of certifying a class in this case. Accordingly, a class action is clearly the superior method of adjudicating this case.

For these reasons, the Class is certified for purposes of the Settlement, and the Court appoints Varnell & Warwick, P.A. and Goldenberg Schneider, LPA as Class Counsel.

## III. APPROVAL OF THE PROPOSED CLASS SETTLEMENT

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In making this determination, the Court considers the following factors:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors."

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

For the reasons that follow, the Court concludes that the Settlement is fair, adequate, and reasonable.

## A.    The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the Settlement was the product of fraud or collusion.  *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary.").  Rather, the Settlement is the result of arm's-length, well-researched, and protracted negotiations.  The Court concludes that this factor favors approval of the Settlement.

## B.    Complexity, Expense, and Likely Duration of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D. N.Y. 2000)).  Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and the possibility of further delay in recovery due to the appellate process weigh in favor of approving the Settlement.

The Parties have been litigating this case for over two years.  Absent the Settlement, continued litigation of this case, as Class Counsel explained at the

hearing, would have resulted in substantial additional time and effort spent preparing for litigation, including additional depositions, record review, expert depositions, class certification and dispositive motions, and trial preparation. Settling the case now saves time and money for the Parties and the Court.

Accordingly, this factor weighs in favor of approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

## C. The Amount of Discovery Engaged in By the Parties

To confirm that Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the Parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (citations omitted). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (citing cases).

In this case, the Parties engaged in extensive discovery. Both sides have ample evidence with which to evaluate the strengths and weaknesses of their positions and determine that the Settlement is fair and reasonable under the circumstances. The Court finds that both sides made well-informed decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

**D.     The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a Settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, Plaintiffs allege that Defendant misrepresented the capabilities of its gutter protection system and that the system is defective. Defendant unequivocally opposes all allegations. Among other issues, it would be difficult for Plaintiffs to prove which specific misrepresentations were made to which customers. Accordingly, due to the existence of uncertainties inherent in their claims, Plaintiff's likelihood of success on the merits of its claims remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement.

**E.     The Opinions of Class Counsel and Class Representatives**

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference.  *See, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *see also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in class action litigation and corporate matters.  *See* Warwick Decl. ¶¶ 8–21, ECF No. 56-7; Goldenberg Decl. ¶ 4, ECF No. 56-8.  Equipped with extensive experience, Class Counsel have concluded that the Settlement is not only fair and reasonable but also confers substantial benefits on the Settlement Class.  Warwick Decl. ¶¶ 22–24, ECF No. 56-7; Goldenberg Decl. ¶¶ 6–8, ECF No. 56-8.  The Court therefore finds that this factor favors approval of the Settlement.

**F.     The Reaction of Absent Class Members**

The Court must also consider the reaction of the Class Members.  *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Case No. 2:20-cv-6229                                                          Page 12 of 22

Individual notice packets were sent by first class mail to nearly 58,000 Class Members and via email to almost 40,000 Class Members. Jue Decl. ¶¶ 3–6, ECF No. 98-3. Only 354 of those Class Members were unable to receive the Notice. *Id.* at ¶ 6. Nearly 50 Class Members objected, and approximately 250 Class Members opted-out of the Settlement. *Id.* at ¶¶ 10–11; Notice, ECF No. 103; Notice, ECF No. 105. Thus, approximately 0.08% of Class Members objected and 0.4% opted out; both percentages are quite low and demonstrate that, as a whole, the Class supports the Settlement. Mot. 2–3, ECF No. 98-1. Moreover, many objections expressed beliefs that Class Members should receive a higher recovery. *See, e.g.*, ECF Nos. 63, 75, & 88. Of course, it is understandable that class members would want as high a recovery as possible, but compromises are often required for settlement. As explained throughout this Opinion and Order when one considers all the relevant factors, the settlement is fair, adequate, and reasonable. Thus, the objectors' desire for higher recovery carries little weight.

In sum, the overall positive response from the Class Members weighs in favor of approving the Settlement.

## G.    The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted). In this case, the Settlement confers immediate benefits on the Class Members, avoids

the risks and expenses in further litigation, and conserves judicial resources.

The Court therefore finds that this factor favors approving the Settlement.

In sum, after considering all of the relevant factors, the Court concludes

that the Settlement provides a substantial benefit to the Parties and is fair,

reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## IV.   ATTORNEY'S FEES AND COSTS

### A.   Attorney's Fees

Class Counsel seeks an award of one-third of the total Settlement Fund in

the amount of $1,749,416.31. Mot. for Attorney's Fees 1, ECF No. 131.

Defendant has not opposed this request for fees nor have any Class Members.

"When awarding attorney's fees in a class action, a court must make sure

that counsel is fairly compensated for the amount of work done as well as for the

results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516

(6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees

and non-taxable costs that are authorized by law or by the parties' agreement."

*See* Fed. R. Civ. P. 23(h).

District courts apply a two-part analysis to assess the reasonableness of

an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp.

2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the court must determine the

appropriate method to calculate the fees, using either the percentage of fund or

the Lodestar approach. *Id.* Whichever method is utilized, the United States

Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees

by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court applies the percentage of the fund method. *See, e.g., Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied (citation omitted)). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352 (internal quotation marks and citations omitted).

Under the circumstances of this specific case, particularly where neither Defendant nor any Class Member oppose the fee request and the Class has received a "substantial benefit," the Court concludes that all of these factors weigh in favor of approving an award of attorney's fees.

As to the first factor, the Court has already described at length the benefit conferred to the Class Members through Settlement. The total settlement amount is for $5.2 million, and each class member had the opportunity to select

one of four benefits. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. Here, although not required, a cross-check using Class Counsel's lodestar amount weighs in favor of granting the requested fee award of $1,749,416.31, which is a 2.18 multiplier of the lodestar amount. "Because of the inherent risks of litigation, courts in this district award multipliers of between 2.0 and 5.0." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) (internal quotation marks and citation omitted); *see also Rudi v. Wexner*, No. 2:20-cv-30682022 WL 1682297, at *5 (S.D. Ohio May 16, 2022) ("2.75 multiplier falls at the low end of that reasonable range").

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *See, e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of

the requested attorney's fees. Class actions such as this have a "value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation— and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287 (citing cases). Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also weigh in favor of granting the requested award. This is a complex case with nuanced issues and significant litigation.

Class Counsel have extensive experience in class action litigation similar to this action. *See* Warwick Decl. ¶¶ 8–21, ECF No. 56-7; Goldenberg Decl. ¶ 4, ECF No. 56-8. As discussed above, the hours expended and time records submitted by Class Counsel further underscore their competency and efficient handling of this matter, favoring approval.

For these reasons, the Court approves the fee award of $1,749,416.31 to Class Counsel.

**B.    Settlement Administration Costs and Out-of-Pocket Expenses**

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in

the prosecution of claims and in obtaining settlement[.]" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). These costs include "expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *Id.*

Class Counsel avers that out-of-pocket expenses, which currently amount to $25,583.69, were necessary and directly related to this litigation. Warwick Decl. ¶ 19, ECF No. 70-2; Goldenberg Decl. ¶ 10, ECF No. 70-4. The Court finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of $25,583.69 for out-of-pocket expenses.

## C.  Class Representative Awards

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement Agreement proposes to award each Plaintiff "household" up to $3,500. Each Plaintiff assisted in the prosecuting and settling of the litigation, including communication with counsel and participating in

discovery. *See* James Zilinsky Decl. ¶¶ 4–7, ECF No. 70-7; Geraldine Zilinksy Decl. ¶¶ 4–7, ECF No. 70-7; Cory Simpson Decl. ¶¶ 4–7, ECF No. 70-7; Meagan McGinley Decl. ¶¶ 4–7, ECF No. 70-7; Sandra GarrettDorsey Decl. ¶¶ 4–7, ECF No. 70-7; Brian Dering Decl. ¶¶ 4–7, ECF No. 70-7; Theresa Dering Decl. ¶¶ 4–7, ECF No. 70-7; Alan Armstrong Decl. ¶¶ 4–7, ECF No. 70-7; Sandy Armstrong Decl. ¶¶ 4–7, ECF No. 70-7. In light of this service, the Court approves the service award of up to $3,500 per household to Plaintiffs.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the Settlement and enters final judgment as follows:

1.    The Court has jurisdiction over the subject matter of this Action and may grant final approval of the Settlement Agreement, including all Exhibits to the Settlement Agreement.  28 U.S.C. § 1332.  The Court also has personal jurisdiction over the Named Plaintiffs, Defendant, and Class Members.

2.    This Order granting final approval of class action settlement incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used herein that also appear in the Settlement Agreement shall have the meanings set forth in the Settlement Agreement.

3.    The Court grants final approval to this Settlement as it is fair, reasonable, and adequate, consistent and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), and the Rules of the Court, and is in the best interests of each of the Parties and the Class Members. Each Class Member is and shall be conclusively and forever bound by the Settlement Agreement.  The Settlement Agreement shall be preclusive in all pending and future lawsuits or other proceedings.  It shall be binding as to all the Released Claims as that term is defined by the Settlement Agreement.  The Court expressly adopts all defined terms in the Settlement Agreement, including, but not limited to, the definition of Released Claims and Releasees.

4.      The Class approved by this Court, and for which final approval is given, is as follows:

> All LeafFilter customers in the United States who appear in
> LeafFilter's customer care database with a Debris-Related Final Issue
> Code for their service request during the time period from January 1,
> 2016 through June 24, 2022. Excluded from the Settlement Class
> are: (1) LeafFilter; (2) any affiliate, parent, or subsidiary of LeafFilter;
> (3) any entity in which LeafFilter has a controlling interest; (4) any
> officer, director, or employee of LeafFilter; (5) any successor or assign
> of LeafFilter; (6) any Judge to whom the Litigation is assigned; (7) any
> person who has resolved or otherwise released their claims as of the
> date of the settlement; and (8) any Settlement Class Member who
> opts-out of the settlement.

5.      The Court finds that the Class Notice and the notice methodology implemented pursuant to this Settlement Agreement: (1) constituted the best practicable notice; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the terms of the Proposed Settlement, the available relief, the release of claims, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the fairness hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.

6.      This Action and every Released Claim (including all individual claims and Class-wide claims presented thereby) is hereby dismissed on the merits and

with prejudice, without fees or costs to any Party except as provided in the Settlement Agreement and as adopted and ordered by the Court in this Order.

7.    Having reviewed Plaintiffs' Motion For Approval of Attorney's Fees Expense Reimbursement, and Class Representative Service Awards, and based upon all previous filings in this action, the Court concludes and orders as follows: (1) Plaintiffs' requested award of Attorney's Fees of $1,749,416.31 is reasonable and, therefore, is awarded; (2) Class Counsel shall be reimbursed $25,583.69 for these reasonable expenses and costs; and (3) the Court awards service awards of $3,500 per Named Plaintiff household.

8.    This Order adjudicates all of the claims, rights and liabilities of the Parties to the Settlement, and is intended to be final and immediately appealable.

9.    Without affecting the finality of this Order for purposes of appeal, the Court retains jurisdiction as to all matters relating to the administration, implementation, consummation, enforcement, and interpretation of this Settlement Agreement and this Order, and for any other necessary purpose.

The Clerk shall close the case.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**